**Lupe VILLARREAL, Appellant**

v.

**HARRIS COUNTY, Texas; Paul Bettencourt, Tax–Assessor Collector for Harris County, Texas; Houston Independent School District; City of Houston; and Linebarger, Goggan, Blair & Sampson, L.L.P., Appellees.**

No. 01–05–00993–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 21, 2006.

Bernard E. Brooks, Stafford, TX, Mary Elizabeth Stow, Crosby, TX, for Appellant.

Kent M. Rider, Linebarger, Goggan, Blair & Sampson, LLP, Austin, TX, Michael R. Hull, Assistant County Attorney, Lana R. Dieringer, Dieringer Law Firm, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

Lupe Villarreal appeals a trial court order granting Harris County's, Paul Bettencourt's (collectively, "Harris County"), the City of Houston's, Houston Independent School District's, and Linebarger, Goggan, Blair & Sampson, L.L.P.'s (collectively, the "City of Houston") pleas to the jurisdiction. Villarreal contends the trial court erred: (1) in granting the jurisdictional pleas because Villarreal's article I, section 17 "takings" claim is not an inverse con-

demnation claim involving the government's use of eminent domain power, (2) in granting the pleas because the Harris County Civil Courts at Law do not have exclusive jurisdiction over all alleged violations of article I, section 17, (3) in granting Harris County's plea because Villarreal's home was taken for a public use without just compensation in violation of article I, section 17 of the Texas Constitution, and (4) in granting Harris County's plea because, although the Texas Tort Claims Act does not apply in this case to waive the governmental immunity of Harris County, Villarreal has pleaded other grounds for waiver. *See* TEX. CONST. art. I, § 17. We conclude that Villarreal's pleadings state a cause of action for inverse condemnation and the trial court properly granted the jurisdictional pleas because the Harris County Civil Courts at Law have exclusive jurisdiction over Villarreal's article I, section 17 claim pursuant to Texas Government Code section 25.1032(c). *Id.;* TEX. GOV'T CODE ANN. § 25.1032(c) (Vernon 2004). We therefore affirm.

## Background

In October 2001, Linebarger, Goggan, Blair & Sampson, L.L.P. filed a tax suit against Villarreal on behalf of Harris County, Houston Independent School District, the City of Houston, the Harris County Education Department, the Port of Houston, the Harris County Flood Control District, and Houston Community College (collectively, the "taxing jurisdictions") to collect delinquent taxes on Villarreal's home. The court awarded the taxing jurisdictions a judgment against Villarreal for the delinquent taxes and ordered the sale of Villarreal's home to satisfy the judgment. Villarreal then obtained a tax loan from CGI Financial, Inc. ("CGI"). CGI paid the amount due under the judgment to the taxing jurisdictions before the scheduled date of the tax sale, thereby

extinguishing the debt. The taxing jurisdictions nevertheless proceeded with the tax sale eight days later and sold Villarreal's home to a private entity, which subsequently evicted Villarreal. The taxing jurisdictions applied $15,158.15 of the sale proceeds to satisfy the judgment, and deposited the remainder of $25,941.85 into the registry of the court. The taxing jurisdictions later returned the money they had received from CGI.

Villarreal then brought this action against Harris County and the City of Houston in the 281st District Court of Harris County, alleging that (1) the tax sale violated article I, section 17 of the Texas Constitution because Harris County and the City of Houston took Villarreal's property for a public use without providing just compensation, (2) the tax sale violated the Fifth and Fourteenth Amendments to the United States Constitution because Harris County and the City of Houston took Villarreal's property for a public use without providing just compensation, and without providing due process of law, and (3) the tax sale violated Villarreal's civil rights under 42 U.S.C. § 1983. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 17; 42 U.S.C. § 1983 (2000). Harris County filed a plea to the jurisdiction contending that (1) the Harris County District Court lacks jurisdiction over the article I, section 17 claim because the Harris County Civil Courts at Law have exclusive jurisdiction over eminent domain proceedings, including inverse condemnation claims, regardless of the amount in controversy, (2) Villarreal's article I, section 17 claim is barred by the doctrine of governmental immunity because Villarreal's property was not taken for public use, but was sold to a private entity for private use, and (3) Villarreal's article I, section 17 claim is barred by the doctrine of governmental immunity because the Texas Tort Claims

Act does not provide a waiver of governmental immunity for a claim arising in connection with the assessment or collection of taxes by a governmental unit. The City of Houston also filed a plea to the jurisdiction, contending that the Harris County District Court lacks jurisdiction over the article I, section 17 claim because the Harris County Civil Courts at Law have exclusive jurisdiction over eminent domain proceedings, including inverse condemnation claims, regardless of the amount in controversy.

The trial court granted Harris County's and the City of Houston's pleas to the jurisdiction. Villarreal brings this interlocutory appeal of the trial court's order pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(8). TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006).

### Plea to the Jurisdiction

 A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004). We review a trial court's ruling on a plea to the jurisdiction de novo because the question of whether a court has subject matter jurisdiction is a matter of law. *Hoff v. Nueces County,* 153 S.W.3d 45, 48 (Tex.2004); *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction.[1] *Miranda,* 133 S.W.3d at 225–26. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has

alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to demonstrate affirmatively the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the trial court should afford the plaintiff an opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then the trial court may grant a plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Id.* at 227.

In this case, the trial court did not state the grounds upon which it granted Harris County's and the City of Houston's pleas to the jurisdiction. As required, Villarreal has attacked all independent grounds that fully support the adverse ruling. *See Britton v. Tex. Dep't of Criminal Justice,* 95 S.W.3d 676, 681 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We will sustain the trial court's order granting the pleas to the jurisdiction if any ground alleged by Harris County and the City of Houston is meritorious.

### Inverse Condemnation

Villarreal first contends that the trial court erred in granting Harris County's and the City of Houston's pleas to the jurisdiction because Villarreal's article I, section 17 takings claim is not an inverse condemnation claim, and therefore not subject to Texas Government Code section 25.1032(c). *See* TEX. GOV'T CODE ANN. § 25.1032(c). Texas Government Code

---

1. As the Texas Supreme Court has observed, (1) sovereign immunity refers to the State's immunity from suit and liability and protects the State and its divisions, and (2) governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003).

section 25.1032(c) provides: "A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy." *Id.* Harris County and the City of Houston respond that Villarreal's article I, section 17 claim is an inverse condemnation claim as a matter of law.

A municipality exercises its power of eminent domain through the process referred to as condemnation. *City of Houston v. Boyle,* 148 S.W.3d 171, 178 (Tex.App.-Houston [1st Dist.] 2004, no pet.). Condemnation is the procedure by which the sovereign exercises its right to take property of a private owner for public use, without consent, upon the payment of just compensation. *Id.; A.C. Aukerman Co. v. State,* 902 S.W.2d 576, 577 (Tex.App.Houston [1st Dist.] 1995, writ denied). "Inverse condemnation occurs when (1) a property owner seeks (2) compensation for (3) property taken for public use (4) without process or a proper condemnation proceeding." *Boyle,* 148 S.W.3d at 178; *A.C. Aukerman Co.,* 902 S.W.2d at 577.

A landowner whose property has been taken, damaged, destroyed for, or applied to public use without adequate compensation may bring an inverse condemnation claim pursuant to article I, section 17 of the Texas Constitution. *Boyle,* 148 S.W.3d at 177. The constitution provides in part, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." Tex. Const. art. I, § 17; *Boyle,* 148 S.W.3d at 177; *Tex. Parks Wildlife Dep't v. Callaway,* 971 S.W.2d 145, 148 (Tex.App.Austin 1998, no

pet.) ("An 'inverse condemnation' proceeding is the avenue of relief available when property has been taken or damaged for public use without compensation or a proper condemnation proceeding, and the property owner wishes to recover compensation for his loss."). The Texas Constitution therefore waives governmental immunity from suit and liability "for the taking, damaging or destruction of property for public use." *Steele v. City of Houston,* 603 S.W.2d 786, 791 (Tex.1980); *Boyle,* 148 S.W.3d at 177. "To demonstrate that a constitutional inverse condemnation has occurred, the landowner must show that (1) the State intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in a 'taking' of property (3) for public use."[2] *Boyle,* 148 S.W.3d at 177; *see also Steele,* 603 S.W.2d at 791–92; *City of Houston v. Northwood Mun. Util. Dist. No. 1,* 73 S.W.3d 304, 308 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

Villarreal notes that courts have allowed article I, section 17 takings claims when the government entity apparently used its taxing power to complete the taking. *See Tex. Workforce Comm'n v. Midfirst Bank,* 40 S.W.3d 690, 697 (Tex.App.-Austin 2001, pet. denied) (holding that state agency's withholding of funds pursuant to its taxing power that were subject to private party's perfected security interest constituted taking under article I, section 17); *County of Burleson v. Gen. Elec. Capital Corp.,* 831 S.W.2d 54, 60 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (allowing article I, section 17 takings claim when taxing authority illegally sold mobile home in which plaintiff had security interest).

In *Midfirst Bank,* the Texas Workforce Commission ("TWC") obtained a judgment

---

**2.** This is the standard for all takings claims under article I, section 17. *See State v. Hale,* 136 Tex. 29, 35–36, 146 S.W.2d 731, 736 (1941); *Kerr v. Tex. Dep't of Transp.,* 45 S.W.3d 248, 250–51 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

against Reliance for unpaid unemployment taxes. 40 S.W.3d at 693. TWC used this judgment to levy receivables owned by Reliance. *Id.* Midfirst Bank, however, had a perfected security interest in the receivables. *Id.* at 692. TWC destroyed Midfirst's security interest when it wrongfully levied the receivables without discovering the security interest. *Id.* at 694. Midfirst brought a takings claim against TWC under article I, section 17. *Id.* The trial court found that a taking had occurred and awarded damages. *Id.* The appellate court agreed and affirmed, holding that Midfirst could bring an article I, section 17 claim even though it appeared as though TWC used its taxing power to accomplish the taking instead of its eminent domain power. *Id.* at 694–98.

In *General Electric,* Burleson County, pursuant to its power of taxation, seized and sold a mobile home under a tax warrant because the owners had failed to pay taxes assessed on the home. 831 S.W.2d at 57–58. The County, however, did not adhere to the statutory requirements for conducting a summary sale. *Id.* at 59. The plaintiff, General Electric Capital Corporation, had a lien on the mobile home, which the improper sale extinguished. *Id.* General Electric sued the County alleging that the improper sale of the mobile home pursuant to the County's taxing authority constituted a taking under article I, section 17. *Id.* at 59–60. The appellate court agreed and affirmed the judgment of the trial court awarding General Electric damages under article I, section 17.[3] *Id.* at 61.

Villarreal contends that *Midfirst Bank* and *General Electric* demonstrate that a plaintiff can maintain a cause of action under article I, section 17 if the government uses its taxing power to complete a taking, and this differs from its eminent domain power. Villarreal therefore asserts that not all claims brought under article I, section 17 are "inverse condemnation" claims involving the government's exercise of eminent domain power, and thus, Texas Government Code section 25.1032(c) does not mandate a plaintiff to bring a takings claim involving the improper use of taxing power in a Harris County

**3.** Villarreal also contends that *Steele v. City of Houston* supports her argument in this case. 603 S.W.2d 786, 789 (Tex.1980). *Steele* involved police officers who intentionally set fire to Steele's house to flush out escaped prisoners. *Id.* At one point in the opinion, the court discussed the fact that "[t]he taking, the damaging, or the destruction of property are often treated, more or less, as synonyms, but the terms are different and have different historical origins." *Id.* The court also recognized that article I, section 17 encompasses the taking, damaging, and destruction of property. *Id.* at 791. The court then expressly stated, "Neither the parties nor the courts below have regarded this case as one of eminent domain or inverse condemnation. Neither have we." *Id.* at 789. The court ultimately held that the government's duty to pay for taking property rights is not excused by labeling the taking as an exercise of police powers. *Id.* at 793. The court never explained why the case was not regarded as one of eminent domain or inverse condemnation, and did not discuss eminent domain or inverse condemnation any further. *Steele* is therefore not controlling in this case. After the *Steele* decision, the Texas Supreme Court recognized that a plaintiff can bring an inverse condemnation claim when the government has taken, damaged, or destroyed her property in violation of article I, section 17. *See Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 554 (Tex.2004) ("A physical taking may occur when the government physically appropriates or invades private property, or unreasonably interferes with the landowner's right to use and enjoy it. When the government takes private property without first paying for it, the owner may recover damages for inverse condemnation." (citation omitted)); *City of Dallas v. Jennings,* 142 S.W.3d 310, 313 n. 2 (Tex.2004) (noting that "taking," "damaging," and "destruction" of one's property are three distinct claims arising under article I, section 17, but term "taking" has become used as shorthand to refer to all three types of claims).

Civil Court at Law because such a claim does not involve eminent domain power. *See* Tex. Gov't Code Ann. § 25.1032(c).

## Analysis

■■■ Article I, section 17 does not grant any powers to the government, but instead limits the inherent sovereign power of eminent domain by imposing the requirements that the government take property only for "public use" and pay "adequate compensation" when doing so. *See* Tex. Const. art. I, § 17; *Whittington v. City of Austin*, 174 S.W.3d 889, 896 (Tex. App.-Austin 2005, pet. denied); *McInnis v. Brown County Water Improvement Dist. No. 1*, 41 S.W.2d 741, 744 (Tex.Civ.App.-Austin 1931, writ ref'd). " 'Eminent domain' refers to '[t]he power to take private property for public use by the state, municipalities, and private persons or corporations authorized to exercise functions of state power.' " *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 456 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (alteration in original) (quoting Black's Law Dictionary 523 (6th ed.1990)). If Villarreal is to recover for the alleged taking in this case, however, the only provision of the constitution that provides a remedy is article I, section 17. *See* Tex. Const. art. I, § 17; *Whittington*, 174 S.W.3d at 896; *McInnis*, 41 S.W.2d at 744. If the government properly uses its taxing power to take private property, the owner of the property has no remedy and article I, section 17 does not apply. *See Rylander v. Palais Royal, Inc.*, 81 S.W.3d 909, 915 (Tex.App.-Austin 2002, pet. denied) ("The State has the authority to levy and collect taxes in a rational and legitimate manner. The exercise of that authority here does not amount to a taking."). In contrast, if the government improperly uses its taxing power to take private property for public use, then an article I, section 17 taking has occurred and the owner may recover in a takings action. *See Midfirst Bank*, 40 S.W.3d at 697; *Gen. Elec.*, 831 S.W.2d at 60. An improper use of taxing power is therefore not a use of taxing power at all, but instead a condemnation and a use of eminent domain power. We hold that the improper use of taxing power to accomplish a taking of real property is a use of eminent domain power, and thus, jurisdiction over any claim that alleges such rests exclusively in the Harris County Civil Courts at Law.[4] *See* Tex. Gov't Code Ann. § 25.1032(c).

Villarreal's pleadings allege that Harris County and the City of Houston improperly used their taxing power to take her property for public use. Villarreal's pleadings therefore state a cause of action for inverse condemnation and the trial court did not err in granting Harris County's and the City of Houston's pleas to the jurisdiction. The district court does not have jurisdiction over Villarreal's article I, section 17 claim pursuant to Texas Government Code section 25.1032(c). *Id.* Because the trial court had a meritorious ground upon which to grant Harris County's and the City of Houston's pleas to the jurisdiction, we need not address Villarreal's remaining issues.

## Conclusion

We hold that Villarreal's pleadings state a cause of action for inverse condemnation. Harris County Civil Courts at Law have exclusive jurisdiction over all article I, sec-

---

4. We further note that this court has applied Government Code section 25.1032(c) to alleged non-negligent nuisance claims that, like the alleged improper use of taxing power here, resulted in a taking as well. *See Kerr v.* *Harris County*, 177 S.W.3d 290, 294 (Tex.App.Houston [1st Dist.] 2005, no pet.); *City of Houston v. Boyle*, 148 S.W.3d 171, 177–79 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

tion 17 claims pursuant to section 25.1032(c) of the Texas Government Code. *See id.; Kerr v. Harris County,* 177 S.W.3d 290, 294 (Tex.App.Houston [1st Dist.] 2005, no pet.); *Boyle,* 148 S.W.3d at 178–79. The trial court properly granted Harris County's and the City of Houston's jurisdictional pleas, and we therefore affirm the order of the trial court.