ACCEPTED
01-14-00767-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/5/2015 8:48:13 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-767-CV

# In the First Court of Appeals
# Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/5/2015 8:48:13 PM
CHRISTOPHER A. PRINE
Clerk

**Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir and Christopher McKnight, Individually and as Next Friend of Nayla McKnight,**
*Appellants-Plaintiffs*,

**v.**

**U.T. Physicians,**
*Appellee-Defendant.*

On Accelerated Appeal From Cause No. 2012-35806
In the 164th Judicial District Court of Harris County, Texas
Honorable Alexandra Smoots-Hogan, Presiding Judge

## APPELLEE'S MOTION FOR PANEL REHEARING

Appellee U.T. Physicians files this Motion for Panel Rehearing. In support thereof, U.T. Physicians respectfully shows this Court the following:

### BASES FOR REHEARING[1]

U.T. Physicians respectfully requests rehearing of this Court's July 7, 2015 decision reversing the trial court's August 14, 2014 order granting U.T.

---

[1] U.T. Physicians files this motion expressly subject to and without waiving its right to seek further review of the Court's opinion on any additional grounds, if necessary.

1

Physicians' Plea to the Jurisdiction and Motion to Dismiss With Prejudice based on sovereign immunity. Exhibit 1. U.T. Physicians does not seek rehearing lightly and does not seek to revisit every issue discussed in the Court's opinion. Rather, U.T. Physicians seeks rehearing of the Court's holding that U.T. Physicians is not entitled to sovereign immunity as a wholly-owned subsidiary and/or agent of the University of Texas Health Science Center at Houston ("UTHSCH"). As shown below, rehearing on that issue is justified on at least two independent grounds.

First, U.T. Physicians is entitled to sovereign immunity as a wholly-owned subsidiary of UTHSCH based on *TRST Corpus, Inc. v. Financial Center, Inc.*, 9 S.W.3d 316 (Tex. App.—Houston [14th Dist.] 1999, pet. denied), in which the Houston [14th Dist.] Court of Appeals held that a wholly-owned subsidiary created by a governmental unit to hold title to a piece of property was a governmental unit entitled to governmental immunity. This Court erroneously attempted to distinguish *TRST Corpus, Inc.* from the present action by observing that the **wholly-owned subsidiary** in *TRST Corpus, Inc.* did not exercise independent discretion from the governmental unit while **U.T. Physicians' <u>employees</u>** in this case do exercise independent discretion from UTHSCH.

But U.T. Physicians' employees are not parties to this appeal and are not the parties seeking sovereign immunity in this appeal. Under the proper analysis, this Court should have examined whether **U.T Physicians itself** is subject to

UTHSCH's control.  Based on the undisputed evidence – which this Court did not address in its opinion – (1) U.T. Physicians' Bylaws and Articles of Incorporation establish that UTHSCH directly and substantially controls U.T. Physicians; and (2) U.T. System's Annual Financial Report expressly states that U.T. Physicians is "U. T. Health Science Center – Houston's blended component unit" and that the U.T. System *"is able to impose its will on the component units."*  Thus, *TRST Corpus, Inc.* supports U.T. Physicians' entitlement to sovereign immunity as a wholly-owned subsidiary of UTHSCH, and this Court erred in disregarding such authority.

Second, U.T. Physicians is entitled to sovereign immunity based on *Zacharie v. City of San Antonio*, 952 S.W.2d 56 (Tex. App.—San Antonio 1997, no writ), in which the San Antonio Court of Appeals held that an agent of a governmental unit may be entitled to governmental immunity even when the agent allegedly exercises independent discretion if, as in this case, the agent was created by the governmental unit.  This Court erred in failing to address, much less distinguish, *Zacharie* in its opinion.  Therefore, even if it were proper to consider what control UTHSCH exercised over U.T. Physicians' employees in determining U.T. Physicians' entitlement to sovereign immunity (which it is not), the existence and degree of such control is legally immaterial in making such determination because U.T. Physicians is an agent created by UTHSCH (by authority of the Legislature and the U.T. System's Board of Regents).

3

Finally, rehearing is necessary based not only on the legal errors above but on the potentially dramatic impact this Court's decision will have on Texas jurisprudence. As counsel for the Lenoirs' recent statement to the press makes clear, future litigants could (and likely will) cite this Court's decision as authority to bring suit against not only U.T. Physicians but other certified nonprofit health corporations operated by other public medical schools in Texas. http://www.texaslawyer.com/id=1202732381097. Rehearing is necessary to prevent what promises to be an extraordinarily costly and unjustified new wave of litigation against such health care institutions if this decision stands.

Consequently, for the reasons stated herein and in its response brief on the merits, U.T. Physicians respectfully requests that this Court grant U.T. Physician's Motion for Panel Rehearing. Given the potential significance of this Court's holding that U.T. Physicians is not entitled to sovereign immunity, U.T. Physicians further requests that this Court grant oral argument on said motion.

## ARGUMENT & AUTHORITIES

U.T. Physicians respectfully submits that its Motion for Panel Rehearing should be granted on at least two independent grounds. First, the Court erred in holding that U.T. Physicians is not entitled to sovereign immunity as a wholly-owned subsidiary of UTHSCH. Second, the Court erred in holding that U.T. Physicians is not entitled to sovereign immunity as an agent of UTHSCH that was

4

created by UTHSCH.  Thus, U.T. Physicians' motion should be granted.

**I.**     **The Court Erred in Holding That U.T. Physicians Is Not Entitled to Sovereign Immunity as a Wholly-Owned Subsidiary of UTHSCH**

This Court first erred in rejecting U.T. Physicians' showing that it is entitled to sovereign immunity as a wholly-owned subsidiary of UTHSCH under *TRST Corpus, Inc. v. Financial Center, Inc.*, 9 S.W.3d 316 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  While the Court correctly ruled that *TRST Corpus, Inc.* held that a wholly-owned subsidiary of a state agency "could benefit from [the state agency's] immunity" (Exhibit 1 at 15), the Court erroneously attempted to distinguish U.T. Physicians' right as a wholly-owned subsidiary of UTHSCH to benefit from UTHSCH's sovereign immunity on the following ground:

> Unlike a holding company, we are concerned here with a functioning medical clinic where physicians (employed by UTHSC-H) come together with nurses, clinical personnel and others (employed by UTP, third-party staffing companies, or jointly between them) to provide medical care to the public.  In a clinical setting, all involved make decisions, interact with patients, and are engaged in various and sometimes distinct aspects of the patients' care.  We do not view the activities in such a dynamic environment to be equivalent to the concept of a holding company that has no independent discretion; the two are not analogous.
>
> Further, by statute, a governmental unit does not waive liability for the negligence of all varieties of agents, only for its employees acting with the scope of their employment with the governmental entity.
>
> The Act defines "employee" as a person who is "in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the

5

governmental unit does not have the legal right to control." ***UTP has never argued that UTHSC-H had the right to control [Nurse] Matthews's work, such that UTHSC-H's immunity would apply to the nurse's work at the clinic.***

*Id*. at 15-16 (citations omitted & emphasis added).

The Court's reasoning above is fatally flawed because it erroneously examines UTHSCH's ability to control the conduct of ***U.T. Physicians' employees*** rather than ***U.T. Physicians itself*** in determining whether U.T. Physicians (not U.T. Physicians' employees) is entitled to sovereign immunity. Nurse Matthews is not a party to this appeal, and Nurse Matthews' entitlement to immunity is not the subject of this appeal. U.T. Physicians is the only party to this appeal, and it is U.T. Physicians' entitlement to sovereign immunity that is the subject of this appeal. Therefore, the only legally relevant analysis in determining U.T. Physicians' entitlement to sovereign immunity as a wholly-owned subsidiary of UTHSCH is whether UTHSCH exerts control over U.T. Physicians itself.

Based on the undisputed evidence in the record (which this Court did not address in its opinion), UTHSCH exerts direct and substantial control over U.T. Physicians' operations in at least the following critical respects:

- The sole member of U.T. Physicians is the current Chief Administration Officer of UTHSCH.

  *CR 61 (U.T. Physicians Bylaws, Arts. 2.1-2.2).*

- As U.T. Physicians' sole member, the current Chief Administration Officer of UTHSCH possesses "the sole power

6

to alter, amend, or repeal the Articles of Incorporation and Bylaws of [U.T. Physicians]."

*CR 61, 67 (U.T. Physicians Bylaws, Arts. 2.5 & 8.1); CR 83 (U.T. Physicians Articles of Incorporation, Art. 9).*

• UTHSCH appoints U.T. Physician's Board of Directors, and the current Chief Administration of Officer of UTHSCH "may remove a director from the Board at any time."

*CR 157 (2013 U.T. System Annual Financial Report); CR 63 (U.T. Physicians Bylaws, Art. 3.1(e)).*

• Each director of U.T. Physicians' Board of Directors must be a full-time member of the faculty of UTHSCH.

*CR 62 (U.T. Physicians Bylaws, Art. 3.1(d)); CR 83 (U.T. Physicians Articles of Incorporation, Art. 6).*

• Of the four directors comprising U.T. Physicians' Board of Directors, one director must be the Chairman of the Medicine Section of UTHSCH, one director must be the Chairman of the Surgery Section of UTHSCH, and one director must be the Dean of UTHSCH or the designee of the Dean of UTHSCH who is a full-time faculty member of UTHSCH.

*CR 63 (U.T. Physicians Bylaws, Art. 3.1(d)).*

• Except as otherwise provided in U.T. Physicians' Bylaws and Articles of Incorporation, "the direction and management of the affairs of [U.T. Physicians] and the control and disposition of its assets shall be vested in a board of directors" – all of whose members must be a full-time member of the faculty of UTHSCH.

*CR 62 (U.T. Physicians Bylaws, Art. 3.1(a)); CR 82 (U.T. Physicians Articles of Incorporation, Art. 6).*

• U.T. Physicians' UTHSCH-dominated Board of Directors elects the officers of U.T. Physicians' Board of Directors as well as U.T. Physicians' corporate officers.

*CR 65 (U.T. Physicians Bylaws, Arts. 5.1(b) & 5.4).*

- U.T. Physicians' UTHSCH-dominated Board of Directors may remove any officer elected by the Board "at any time … with or without cause."

*CR 65 (U.T. Physicians Bylaws, Art. 5.1(d)).*

- U.T Physicians' President, expressly "subject to the control of" the UTHSCH-dominated Board of Directors, "shall have general charge and supervision of the administration of the activities and affairs of" U.T. Physicians.

*CR 65 (U.T. Physicians Bylaws, Art. 5.3(c)).*

- U.T. Physicians' Treasurer, "under the direction of the Board, shall disburse all moneys and sign all checks and other instruments drawn on or payable out of the funds of [U.T. Physicians], unless the Board authorizes other officers, employees, or agents of [U.T. Physicians] to sign checks without the counter signature of the Treasurer."

*CR 66 (U.T. Physicians Bylaws, Art. 5.3(f)).*

In addition to the undisputed evidence above, the U.T. System's Annual Financial Report – which the Court also did not address in its opinion – (1) specifically describes U.T. Physicians as "U. T. Health Science Center – Houston's blended component unit" (CR 163); and (2) expressly states that the U.T. System ***"is able to impose its will on the component units."*** (CR 156) (emphasis added).

Significantly, this Court did not cite any authority holding that the existence and degree of control that UTHSCH exerts over U.T. Physicians falls below any alleged legal threshold required for U.T. Physicians to be entitled to sovereign immunity as a wholly-owned subsidiary of UTHSCH.  The only authority that this

8

Court cited on the allegedly necessary degree of control – *Brown & Gay Engineering, Inc. v. Olivares*, 461 S.W.3d 117 (Tex. 2015) (Exhibit 1 at 15) – merely held that the principal's immunity did not extend to the private party in that case where the principal had "no control" over the private party. *Id*. at 126 ("We need not establish today whether some degree of control by the government would extend its immunity protection to a private party; we hold only that no control is determinative."). As shown above, the undisputed evidence in this case conclusively establishes that UTHSCH's degree of control over U.T. Physicians is direct and substantial – far from "no control" at all. *See supra* at 6-8.

This also is not simply a case where a private independent contractor seeks governmental immunity for performing a service that it contracted to perform on a governmental unit's behalf as in *Brown & Gay Engineering, Inc.* Unlike the private independent contractor in that case, (1) U.T. Physicians ***was created by UTHSCH*** (by authority of the Legislature and U.T. System's Board of Regents) to perform the services that form the basis of the Lenoirs' claims in this litigation,[2] (2) U.T. Physicians' sole member is the Chief Administration Officer of UTHSCH, (3) U.T. Physicians' governing Board of Directors is composed of full-time

---

[2] CR 35 (minutes of U.T. System's Board of Regents authorizing UTHSCH and other institutions to establish certified nonprofit health corporations to provide UTHSCH "with the necessary capability to react to market demands to ensure (1) an adequate referral base of patients to meet the medical education needs of the institution and (2) the continued fiscal viability of their Medical Service, Research and Development Plans (MSDRP)").

members of UTHSCH's faculty; and (4) U.T. Physicians' UTHSCH-dominated board exerts direct and substantial control over U.T. Physicians (CR 35 & *supra* at 6-8). *See TRST Corpus, Inc.*, 9 S.W.3d at 321 (holding that subsidiary corporation was entitled to sovereign immunity because, *inter alia*, corporation was formed, owned, and entirely controlled by a governmental unit). Thus, *Brown & Gay Engineering, Inc.* is inapposite because it is readily distinguishable on the facts.

Furthermore, the Texas Supreme Court's primary rationale for declining to extend sovereign immunity to the private independent contractor in *Brown & Gay Engineering, Inc.* does not apply in this case. In *Brown & Gay Engineering, Inc*, the Supreme Court stated that extending sovereign immunity to the private independent contractor in that case would not further sovereign immunity's rationale and purpose – "to guard against the 'unforeseen expenditures' associated with the government's defending lawsuits and paying judgments 'that could hamper government functions' by diverting funds from their allocated purposes." 461 S.W.3d at 123. But the undisputed evidence establishes that U.T. Physicians' assets – unlike the assets of the private independent contractor in *Brown & Gay Engineering, Inc.* – are assets of the U.T. System, so a lawsuit implicating U.T. Physicians' assets would implicate the U.T. System's assets. CR 84 (U.T. Physicians' Articles of Incorporation, Art. 11); *see also* CR 156-63.

The only other case that this Court cited in support of its holding that U.T.

Physicians is not entitled to assert sovereign immunity as a wholly-owned subsidiary of UTHSCH – *K.D.F. v. Rex*, 878 S.W.2d 589 (Tex. 1994) – is also inapposite. Exhibit 1 at 15. The Court cited *K.D.F.* for the proposition that an entity "that operates solely under [the] direction of [a] governmental unit without exercising any discretion of its own may benefit from [the] governmental unit's immunity." *Id.* While *K.D.F.* supports an entity's assertion of governmental immunity in such instance, there is no language in *K.D.F.* establishing a bright-line rule for the converse proposition – that governmental immunity does not apply when the entity exercises any independent discretion. Thus, *K.D.F.* does not support, much less compel, this Court's rejection of U.T. Physicians' assertion of sovereign immunity based on the undisputed evidence that it was created by UTHSCH (by authority of the Legislature and U.T. System's Board of Regents) and is subject to direct and substantial control by UTHSCH. *See supra* at 6-8.

It also is important to note that the entity that the Supreme Court concluded not to be entitled to benefit from the sovereign immunity of the Kansas governmental unit in *K.D.F.* was described by the Supreme Court as the Kansas governmental unit's "independent investment advisor," "an Ohio corporation with its principal place of business in Ohio," and "an independent contractor." *K.D.F.*, 878 S.W.2d at 591, 597. In contrast, U.T. Physicians, as shown above, was created by UTHSCH (by authority of the Legislature and U.T. System's Board of Regents)

11

and is subject to direct and substantial control by UTHSCH. *See supra* at 6-8.

**II.    The Court Erred in Holding That U.T. Physicians Is Not Entitled to Sovereign Immunity as an Agent of UTHSCH That Was Created By UTHSCH**

A second independent ground for rehearing is that this Court erred in holding that U.T. Physicians is not entitled to sovereign immunity as an agent of UTHSCH where U.T. Physicians was created by UTHSCH.  In *Zacharie v. City of San Antonio*, 952 S.W.2d 56 (Tex. App.—San Antonio 1997, no writ) – which was cited in U.T. Physicians' response brief on the merits but was not discussed in this Court's opinion – the plaintiff sued the San Antonio Water System Board of Trustees ("the Water System") for fire damage to the plaintiff's property that was caused by the Water System's alleged negligence in maintaining equipment that supplied adequate water pressure to the fire hydrants where the fire occurred and in locking or otherwise causing the fire hydrants to be in a condition that prevented the fire fighters from using them. *Id*. at 57.

The Water System sought summary judgment based on governmental immunity, which the plaintiff challenged on the ground that the Water System was not an agent of the City of San Antonio. *Id*. at 58.  The plaintiff noted that the Water System was an independent entity from the City based, in part, on the following: (1) the management, control, and operation of the Water System was vested in a board of trustees; (2) the board of trustees determined the rates, fees, or

12

charges for services rendered by the Water System; (3) the Water System could litigate as a plaintiff against the City; and (4) the Water System had the power to employ all officers, employees, and professional consultants. *Id*.

The San Antonio Court of Appeals stated that it did not find "these perceived trappings of the independent nature of the Water System to be controlling on whether the Water System is an agent of the City." *Id*.; *see also id*. at 59 ("Although the Water System has complete management and control over its operation, it remains an agent of the City"). The Court of Appeals noted that, under Article 1115 of the Texas Revised Civil Statutes, the city council of a city owning an encumbered water works system could place the management and control of such system in the hands of a board of trustees, with the duties and powers of such board being specified in the contract of encumbrance. *Id*. at 58. The Court of Appeals ruled that because Article 1115 granted cities like San Antonio the power to create boards to manage and control their water systems, those boards – within their limited field of operation – were agents of those cities. *Id*. Consequently, the Court of Appeals held, the Water System was an agent of the City and was entitled to governmental immunity. *Id*. at 59.

*Zacharie* compels a similar outcome in this case. Contrary to this Court's decision in this case, the Court of Appeals in *Zacharie* held that the Water System's exercise of independent discretion in the performance of its core

13

functions was not dispositive and, more importantly, did not preclude the Water System from being entitled to governmental immunity. Specifically, the Court of Appeals concluded that since San Antonio (which indisputably was entitled to governmental immunity) **created** the Water System, the Water System was an agent of the City for the purpose of asserting governmental immunity in a suit based on the operation of the Water System "[a]lthough the Water System **has complete management and control over its operation**." *Id*. (emphasis added). In this case, the undisputed evidence establishes that U.T. Physicians was created by UTHSCH and the Lenoirs' claims against U.T. Physicians are based on U.T. Physicians' performance of services that it was created to perform. CR 35. Thus, U.T. Physicians is entitled to sovereign immunity as UTHSCH's agent even assuming U.T. Physicians retains significant independent discretion in its activities.

Further supporting U.T. Physicians' entitlement to sovereign immunity as an agent of UTHSCH is the San Antonio Court of Appeals' subsequent decision in *San Antonio Water System v. Smith*, 451 S.W.3d 442 (Tex. App.—San Antonio 2014, pet. withdrawn), which this Court cited in its opinion for the proposition that the San Antonio Water System ("SAWS") "did not independently meet the statutory definition of a governmental unit" and "was not a governmental unit independent of the [City of San Antonio]" under Section 101.001(3)(D). Exhibit 1 at 13-14. While the Court of Appeals in *Smith* concluded that SAWS was not an

14

independent governmental unit under Section 101.001(3)(D) based on the facts in that case, the Court of Appeals so ruled merely for the purpose of holding that the plaintiffs were not required to provide SAWS notice of the plaintiffs' claims under the TTCA separate and apart from the plaintiffs' providing the City of San Antonio notice of the plaintiffs' claims. *Smith*, 451 S.W.3d at 451.

Critically, the Court of Appeals in *Smith* necessarily assumed that SAWS, at a minimum, was entitled to governmental immunity as an agent of San Antonio. Otherwise, there would have been no need for the Court of Appeals to have addressed whether providing San Antonio notice of the plaintiffs' claims was sufficient to satisfy the TTCA's notice requirement with respect to SAWS. In other words, if the Court of Appeals had believed that SAWS was not entitled to governmental immunity, then it would have been immaterial whether SAWS was provided notice of the plaintiffs' claims under the TTCA. *Smith* thus supports, rather than undermines, U.T. Physicians' entitlement to sovereign immunity.[3]

In sum, Texas law directly supports U.T. Physicians' entitlement to

---

[3] In its opinion, this Court further stated that "applying UTHSC-H's immunity to UTP would be contrary to the Legislature's directive that only it may add entities to the UT System and, by extension, to its immunity protections." Exhibit 1 at 17. U.T. Physicians respectfully submits that holding that it is entitled to sovereign immunity on the ground that it is a wholly-owned subsidiary and/or agent (*i.e.*, a component unit) of UTHSCH that was created by UTHSCH (by authority of the Legislature and U.T. System's Board of Regents) would not violate such a directive. At best, the alleged legislative directive above might be implicated only if this Court were to hold that U.T. Physicians is separately entitled to sovereign immunity as a governmental unit independent of UTHSCH.

15

sovereign immunity as the wholly-owned subsidiary and/or agent of UTHSCH where the undisputed evidence conclusively establishes that UTHSCH: (1) by authority of the Legislature and U.T. System's Board of Regents, created U.T. Physicians as a component unit of UTHSCH; and (2) exerts direct and substantial control over U.T. Physicians. Consequently, U.T. Physicians respectfully requests that this Court grant U.T. Physicians' Motion for Panel Rehearing.

## CONCLUSION

For the reasons stated above, U.T. Physicians respectfully requests that this Court – after hearing oral argument on U.T. Physicians' Motion for Panel Rehearing – (1) grant U.T. Physicians' Motion for Panel Rehearing; (2) vacate the Court's July 7, 2015 judgment and opinion; and (3) affirm the trial court's August 14, 2014 order granting U.T. Physicians' Plea to the Jurisdiction and Motion to Dismiss With Prejudice. U.T. Physicians further respectfully requests that this Court grant U.T. Physicians any and all other relief to which it is entitled.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP


By   /s/ Warren S. Huang
     David Iler
     State Bar No. 10386480
     david.iler@nortonrosefulbright.com
     Warren Huang
     State Bar No. 00796788
     warren.huang@nortonrosefulbright.com
     Jaqualine McMillan
     State Bar No. 24082955
     jaqualine.mcmillan@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:   (713) 651-5246


KEN PAXTON
Attorney General of Texas

Jason Warner
Assistant Attorney General
State Bar No. 24028114
jason.warner@texasattorneygeneral.gov
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:  (512) 463-2197
Facsimile:   (512) 463-2224

* Signed By Permission

**Counsel for Appellee U.T. Physicians**

17

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned counsel – in reliance upon the word count of the computer program used to prepare this document – certifies that this motion contains 3,802 words, excluding the words that need not be counted under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ Warren S. Huang
Warren S. Huang

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of Appellee U.T. Physician's Motion for Panel Rehearing was served pursuant to Texas Rule of Appellate Procedure 9.5 through the electronic filing manager and/or by electronic mail on August 5, 2015, upon:

Mr. Joseph M. Gourrier
THE GOURRIER LAW FIRM
530 Lovett Boulevard, Suite B
Houston, Texas 77006
joseph@gourrierlaw.com
(Counsel for Appellants)

/s/ Warren S. Huang
Warren S. Huang

# EXHIBIT 1



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00767-CV

————————————

**SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR AND CHRISTOPHER MCKNIGHT, INDIVIDUALLY AND AS NEXT FRIEND OF NAYLA MCKNIGHT, Appellants**

**V.**

**U.T. PHYSICIANS, Appellee**

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2012-35806**

---

## O P I N I O N

This is a health care liability case arising from the death of Shana Lenoir hours after receiving prenatal care at U.T. Physicians clinic (UTP). UTP obtained dismissal from the suit when the trial court granted its plea to the jurisdiction based

on an assertion of governmental immunity. The appellants (referred to collectively as "the Lenoirs") brought this interlocutory appeal challenging the dismissal.

The Lenoirs contend that the trial court erred by granting UTP's plea to the jurisdiction because (1) UTP failed to prove that it is a governmental unit as defined by the Tort Claims Act (TCA) and (2) to the extent the TCA does apply, the Lenoirs adequately alleged that Shana's death was proximately caused by an employee's use of tangible physical property.

Because we agree that UTP did not meet its burden to establish that it is a governmental unit, we reverse the trial court's order granting UTP's plea to the jurisdiction and remand for further proceedings.

## Background

Shana Lenoir received prenatal care at UTP clinic. She was seen by Dr. Gonski—a second-year medical resident. Shana discussed with Dr. Gonski complications she had with an earlier twin pregnancy. The twins were born preterm. One died; the other required extensive medical care and was in the neonatal intensive care unit for several months. On this visit, Shana was between 32 and 35 weeks pregnant with twins. Dr. Gonski prescribed weekly injections of progesterone. A nurse employed by UTP clinic, Angela Matthews, gave Shana her initial progesterone injection during the office visit.

2

While at home several hours later, Shana began having difficulty breathing. She was taken by EMS to Memorial Hermann Hospital; however, she and both of her unborn children died before they arrived.

The Lenoirs sued the treating physician (Dr. Gonski), the attending physician overseeing Dr. Gonski (Dr. Huang), the nurse who injected the progesterone medication (Matthews), and UTP clinic.[1] In related appeals, we have rendered judgment for Matthews, affirmed the dismissal of Dr. Huang, and reversed the dismissal of Dr. Gonski.[2] We now consider whether the trial court erred by dismissing UTP based on governmental immunity.

## The Lenoirs are not Barred by Judicial Admission

As an initial matter, UTP argues that the Lenoirs are prohibited from contesting its status as a governmental unit because they made judicial admissions when contesting the dismissal of UTP's nurse employee, Matthews.

### A. A Judicial admission is an unequivocal assertion of fact

A judicial admission is an unequivocal assertion of fact that, once made, relieves the opposing party of its burden of proving the admitted fact and bars the admitting party from disputing that fact. *See Holy Cross Church of God in Christ*

---

[1] Dr. Gonski contended that she worked for the UT Medical Foundation, and Dr. Huang contended that he worked for the UT Health Science Center at Houston (UTHSC-H). The Lenoirs did not sue either of those entities.

[2] *Matthews v. Lenoir*, 439 S.W.3d 489 (Tex. App.—Houston [1st Dist.] 2014, pet. filed Oct. 6, 2014); *Lenoir v. Marino*, No. 01-13-01034-CV, 2015 WL _____ (Tex. App.—Houston [1st Dist.] July 2, 2015, no pet. h.) (op. on reh'g).

*v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983); *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). A judicial admission must be "clear, deliberate, and unequivocal." *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996).

> The elements for establishing that a statement is a judicial admission are
>
> (1)   the statement must be made in the course of a judicial proceeding;
>
> (2)   it must be contrary to an essential fact or defense asserted by the party;
>
> (3)   it must be deliberate, clear, and unequivocal;
>
> (4)   it cannot be destructive of the opposing party's theory of recovery or defense; and
>
> (5)   enforcing the statement as a judicial admission would be consistent with public policy.

*H2O Solutions, Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "An assertion of fact pleaded in the alternative is not a judicial admission." *H2O Solutions*, 438 S.W.3d at 617; *accord Wolf*, 44 S.W.3d at 568.

## B.    The Lenoirs did not judicially admit that UTP is a governmental unit

UTP's original answer contained an assertion of governmental immunity. Consistent with that assertion, the Attorney General's Office began representing UTP. Subsequently, Matthews moved for dismissal, asserting that she had not been

4

timely served with an expert report. In response, the Lenoirs argued that the AG's actual representation of the employer (UTP) alleged to be vicariously liable for the negligent acts of its employee (Matthews) mandated that the AG also represent the employee. Thus, the Lenoirs argued, timely service of the expert report on the AG's office counted as timely service on Matthews.

Nowhere in that argument is there a "deliberate, clear, and unequivocal" assertion of fact that UTP is a governmental unit. *See Regency Advantage Ltd. P'ship*, 936 S.W.2d at 278. Instead, the Lenoirs were arguing that, if the defendants were going to "allege" that they had governmental immunity, then they were going to be bound by the laws and rules that accompany that assertion, including that the AG's representation of the employer mandates that the AG also represents the employee. In other words, the defendants (including UTP and Matthews) could not purport to rely on governmental immunity to defeat the Lenoirs' claims while avoiding the effects of that assertion (AG representation and adequate service).

The Lenoirs took a consistent position in the *Matthews* appeal, arguing in their brief:

> U.T. Physicians was represented by the Office of the Attorney General (OAG) because it alleged that it is a governmental unit in its answer. As such, the OAG is also the attorney for U.T. Physicians' former co-employee, Nurse Matthews. . . . Since U.T. Physicians alleges that it is a governmental unit of the State of Texas and Nurse Matthews was its former employee, the attorney general is her attorney in negligence actions arising from conduct in the course and scope of her employment or contractual performance.

. . . .

> The Lenoirs have never argued that the OAG "automatically became Nurse Matthews' attorney simply upon filing of the lawsuit. Instead, the Lenoirs asserted that the OAG was already participating in the lawsuit as the attorneys of record for Nurse Matthews' vicariously liable co-employer, U.T. Physicians, an alleged governmental unit. Therefore, U.T. Physicians must have requested legal representation from the OAG because the OAG filed an answer on behalf of U.T. Physicians, on July 20, 2012. Since the OAG was already representing U.T. Physicians based on the conduct of its co-employee, Nurse Matthews, the OAG was also responsible for providing legal representation to Nurse Matthews, even though she had not yet been served with process.

To the extent there is an "assertion of fact" in this argument, it concerns who was representing Matthews, not whether UTP is a governmental unit.

Likewise, the Lenoirs never admitted that UTP was a governmental unit in the pleadings underlying this appeal. The Lenoirs have consistently maintained that "UT Physicians is an independent contractor to UTHSCH and is not entitled to governmental immunity. Further, Defendant Angela Matthews is an employee of an independent contractor and her employer is not entitled to assert governmental immunity under the plain language of the statute."

Furthermore, AG representation was not the Lenoirs' only argument against dismissal of Matthews. They made two additional, *alternative* arguments: (1) Matthews failed to timely object to the Lenoirs' report and, therefore, waived all other challenges to the report and (2) the Lenoirs' diligence in attempting service on Matthews prevented dismissal on constitutional grounds.

In conclusion, the Lenoirs made alternative arguments why Matthews should not be dismissed from the suit. None of the three arguments were based on an unequivocal assertion that UTP qualifies as a governmental unit. We, therefore, conclude that no judicial admission was made. Accordingly, we reject UTP's argument that the Lenoirs are barred from challenging the grant of UTP's plea to the jurisdiction.

**Plea to the Jurisdiction Standard of Review**

A trial court must have subject-matter jurisdiction to decide a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plaintiff bears the initial burden of alleging facts that affirmatively demonstrate the trial court's subject-matter jurisdiction over the suit. *Id.* at 446. A defendant may challenge the trial court's subject-matter jurisdiction through a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

The purpose of a plea to the jurisdiction is to "defeat a cause of action without regard to whether the claims asserted have merit." *Id.* It does not authorize delving into the merits of the plaintiff's claims, but rather, examining the preliminary issue of whether the merits of those claims should be reached. *Id.* Accordingly, in reviewing the trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in favor of the plaintiff and determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to

hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Villarreal v. Harris Cnty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not reveal incurable jurisdictional defects, the issue is one of pleading sufficiency, and the trial court may either afford the plaintiff an opportunity to amend or await further development of the case's merits. *Miranda*, 133 S.W.3d at 226–27; *Villarreal*, 226 S.W.3d at 541. Conversely, if the pleadings affirmatively negate the existence of jurisdiction, the trial court may grant the plea to the jurisdiction without providing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *Villarreal*, 226 S.W.3d at 541.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227; *Bland*, 34 S.W.3d at 555 (confining evidentiary review to evidence relevant to jurisdictional issue). If the evidence creates a fact question regarding the jurisdictional issue, then the movant has failed to establish its right to dismissal. *See Miranda*, 133 S.W.3d at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea to the jurisdiction may be ruled on as a matter of law. *Id.* at 228.

## Governmental Immunity and
## Waiver through the Tort Claims Act

The doctrine of governmental immunity bars suits against the state and its governmental units unless the state consents by waiving immunity. *Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013). Governmental immunity protects subdivisions of the State from lawsuits and liability, which would otherwise "hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655–56 (Tex. 2008)). Only the Legislature may waive immunity. *Id.*; *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Statutory waivers of immunity are construed narrowly. *Garcia*, 253 S.W.3d at 655; *see* TEX. GOV'T CODE ANN. § 311.034 (West 2013) (statutes are construed to waive sovereign immunity only if "by clear and unambiguous language").

The TCA provides a limited waiver for certain tort claims against the government. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001–.109 (West 2014). The TCA permits a determination of liability on a governmental unit for a death caused by use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. *Id.* § 101.021(2).

**UTP Has Not Established that it is a Governmental Unit**

An entity meets the statutory definition of a governmental unit if its "status and authority . . . are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (defining governmental unit). The "dispositive issue" is less who creates the entity than who gives "meaning" to its existence; in other words, "[w]ho bestows the status and authority" to the entity and specifies its "powers," "authority," and "status." *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 81 (Tex. 2011).

There is no dispute that the University of Texas System and the University of Texas Health Science Center at Houston (UTHSC-H) are governmental units under the TCA and are entitled to governmental immunity. But that does not answer the question whether UTP's status and authority are derived from the state constitution or laws of the Legislature.

UTP argues that its status and authority are derived from laws passed by the Legislature, relying on various Education Code provisions and the minutes from a meeting of the Board of Regents of the University of Texas System. UTP points to Education Code Section 65.31(a), providing that the UT Board of Regents "is authorized and directed to govern, operate, support, and maintain each of the component institutions that are now or may hereafter be included in a part of The

10

University of Texas System." TEX. EDUC. CODE ANN. § 65.31(a) (West 2002) Section 65.11 charges the UT Board with the "administration" and "organization" of the UT System institutions and entities to "achieve the maximum operating efficiency of such institutions and entities." *Id.* § 65.11 (West 2002). Further, Section 65.31(g) allows the UT Board "by rule [to] delegate a power or duty of the board to a committee, officer, employee, or other agent of the board." *Id.* § 65.31(g).

UTP also points to the minutes of a UT Board of Regents meeting memorializing the Board's decision to permit UTHSC-H and other health science centers to create certified nonprofit health corporations, like UTP. Based on these provisions and evidence, UTP claims that it is a governmental unit derived from the laws of the Legislature.

But the Legislature has never granted UTP power, authority, or status. Section 65.02 specifically lists 12 entities that comprise the UT System. *Id.* § 65.02. It further lists 29 subordinate entities that are included within the 12 main entities. *Id.* The statute identifies UTHSC-H and lists within it the UT Houston Medical School, Dental Branch, Graduate School of Biomedical Sciences, School of Health Information Sciences, School of Public Health, Speech and Hearing Institute, and School of Nursing. *Id.* The list does not include UTP. *See id.*

11

Subsection (b) then states, "The University of Texas System shall also be composed of such other institutions and entities as from time to time may be *assigned by specific legislative act* to the governance, control, jurisdiction, or management of The University of Texas System." *Id.* § 65.02(b) (emphasis added). Section 73.001(7) states that the University of Texas Houston is composed of six component institutions (none of which are UTP) and "other institutions and activities assigned to it from time to time." *Id.* § 73.001. Thus, the Legislature reserved to itself authority to add entities to the UT System, and it has not added UTP.

An entity cannot incorporate itself into the UT System "by custom and usage or at the behest of a single university officer." *Univ. Interscholastic League v. Payne*, 635 S.W.2d 754, 757 (Tex. App.—Amarillo 1982, writ dism'd) (holding that UIL failed to establish that it qualified as governmental entity in its own right or as part of UT–Austin, even though UIL was created at urging of UT–Austin president). Only if the Legislature specifically addresses the existence and status of an entity will the requirements for classification as a governmental unit be met. *See Univ. Interscholastic League v. Sw. Officials Ass'n, Inc.*, 319 S.W.3d 952, 958 (Tex. App.—Austin 2010, no pet.) (noting post-*Payne* amendment to Education Code declaring that UIL is part of UT–Austin and holding that statutory reference

met requirement for UIL to be considered governmental unit for governmental immunity purposes).

Adhering to the rule that the source of status and authority is the dispositive issue, the Texas Supreme Court recently held that open-enrollment charter schools qualify as governmental units because multiple Education Code provisions detail open-enrollment charter schools' powers, authority to operate, and status, even though each such entity is chartered by the State Board of Education instead of the Legislature. *See LTTS Charter Sch.*, 342 S.W.3d at 80–82. As the Court explained,

> The Legislature's own pronouncements declare the status and authority of open-enrollment charter schools. Other state entities and officials may exercise a measure of oversight pursuant to those statutory commands, but the commands themselves, and that they are legislative, are what matter most.

*Id.* at 82.

We also find instructive an appellate opinion in which the court held that a water system created by the City of San Antonio did not independently meet the statutory definition of a governmental unit. *See San Antonio Water Sys. v. Smith*, 451 S.W.3d 442, 450–51 (Tex. App.—San Antonio 2014, pet. withdrawn). In *Smith*, the San Antonio Water System claimed that it was a governmental unit independent of the city. *Id.* at 445–46. The appellate court noted that the Legislature had authorized municipalities to create water system. And the City of San Antonio, by a city ordinance, had done so. However, no statute conferred

status or authority to the water systems. *Id.* at 450. Because the actual status and authority of the water system derived from a city ordinance, instead of a statute, the appellate court held that the water system was not a governmental unit independent of the city. *Id.* at 450–51. It was, instead, an agent of the governmental unit that created it—the City of San Antonio. *Id.*

Here, UTP points to no statutory provision that discusses the status or authority of non-profit healthcare corporations like UTP. The evidence establishes that UTP's status and authority are derived from actions by the UT System Board, not the Legislature. *Cf. LTTS Charter Sch.*, 342 S.W.3d at 80 (noting multiple Education Code provisions establishing powers and authority of charter schools) *and Arbor E&T, LLC v. Lower Rio Grande Valley Workforce Dev. Bd., Inc.*, No. 13-13-00139-CV, 2013 WL 8107122, at *4 (Tex. App.—Corpus Christi Dec. 5, 2013, no pet. h.) (considering multiple statutory provisions discussing "status" and "authority" of local workforce development boards to hold that local workforce development board met statutory definition of governmental unit). We therefore conclude that UTP does not qualify as a governmental unit independent of UTHSC-H.

## UTP may not rely on UTHSC-H's Immunity

UTP next argues that, even if it does not qualify as a governmental unit in its own right, it may share in UTHSC-H's immunity because it is a wholly-owned

14

subsidiary of UTHSC-H.  UTP finds support for its argument in *TRST Corpus, Inc. v. Fin. Ctr., Inc.*, 9 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

In *TRST*, the Teacher Retirement System of Texas (TRS), a state agency, formed a title-holding subsidiary corporation (TRST) to hold its assets. *Id.* at 321. TRS was the sole shareholder of all of TRST's stock. The creation of the wholly-owned subsidiary was under the authority provided by Government Code section 825.304, which states that the "assets of the retirement system may be held in the name of agents . . . or other entities designated by the board of trustees." *Id.* at 321 & n.1 (citing TEX. GOV'T CODE ANN. § 825.304 (West 2012)).  The appellate court held that TRS's agent could benefit from its immunity. *Id.*; *see also K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994) (holding that entity created by Kansas governmental unit that operates solely under direction of governmental unit without exercising any discretion of its own may benefit from governmental unit's immunity); *cf. Brown & Gay Eng'g, Inc. v. Olivares*, No. 13-0605, 2015 WL 1897646, at *5 (Tex. Apr. 24, 2015) (discussing *K.D.F.* case and holding that "no control" by principal over private party is "determinative" of issue and principal's immunity will not be extended to private party).

Unlike a holding company, we are concerned here with a functioning medical clinic where physicians (employed by UTHSC-H) come together with

15

nurses, clinical personnel and others (employed by UTP, third-party staffing companies, or jointly between them) to provide medical care to the public. In a clinical setting, all involved make decisions, interact with patients, and are engaged in various and sometimes distinct aspects of the patients' care. We do not view the activities in such a dynamic environment to be equivalent to the concept of a holding company that has no independent discretion: the two are not analogous.

Further, by statute, a governmental unit does not waive liability for the negligence of all varieties of agents, only for its employees acting with the scope of their employment with the governmental entity. *Dumas v. Muenster Hosp. Dist.*, 859 S.W.2d 648, 650 (Tex. App.—Fort Worth 1993, no writ); *Harris v. Galveston Cnty.*, 799 S.W.2d 766, 768 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

The Act defines "employee" as a person who is "in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2); *Murk v. Scheele*, 120 S.W.3d 865, 866 (Tex. 2003). UTP has never argued that UTHSC-H had the right to control Matthews's work, such that UTHSC-H's immunity would apply to the nurse's work at the clinic.

Moreover, applying UTHSC-H's immunity to UTP would be contrary to the Legislature's directive that only it may add entities to the UT System and, by extension, to its immunity protections. *See* TEX. EDUC. CODE ANN. § 65.02(b) ("The University of Texas System shall also be composed of such other institutions and entities as from time to time may be *assigned by specific legislative act . . . .*" (emphasis added)); *id.* § 73.001(7) (stating that The University of Texas at Houston is composed of only six named component institutions, plus "other institutions and activities assigned to it from time to time.").

Because we have concluded that UTP has not met its burden to establish that it qualifies as a governmental unit or to otherwise assert a right to governmental immunity from its relationship with UTHSC-H, we conclude that the trial court erred in granting UTP's plea to the jurisdiction and sustain the Lenoirs' first issue. We therefore do not reach their second issue concerning whether the Lenoirs adequately pleaded use of personal property to fit within an area in which immunity has been waived.

### Conclusion

The trial court's order granting UTP's plea to the jurisdiction and dismissing the Lenoirs' claims against UTP is reversed. The case is remanded for further proceedings.

17

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.