**Opinion issued September 5, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00373-CV

———————————

**PORT OF HOUSTON AUTHORITY, Appellant**

V.

**AGNES A. AARON; JIMMY L. ALBERTE AND PATRICIA ALBERTE; ROBERT L. ANSELMI; MIKE ARGO AND DEDE ARGO; GARY ARRANT; ROGER ASHTON; PATRICIA AYERS; ADAM BARR; BILLY BOWEN; JAMES ALLEN BROWN; ROBERT BUNKER; MICHAEL BURGETT; GILBERT CADE AND PORTIA CADE; JOE WILLIAM CANAS; CRISTORAL CARLOS AND BRIDGETTE CARLOS; MARTHA JOYCE CASH; DUDLEY CHAMBERS AND LINDA CHAMBERS; CHARLES P. CHRISTENSEN; WILLIAM S. DAVIS; JUDY DIETRICH; DAVID FAIN AND DANIEL FAIN; SCOTT FLEMING; MELANIE FRICK; AUDREY GAMBLE; ALBERT A. GARCIA, JR.; LEONEL GARCIA; JERRY GARDNER AND GRACE GARDNER; CAROLYN GLOYNA; ROBERT GOEBEL; PAUL HAMILTON AND TONI HAMILTON; DOUGLAS W. HEINTSCHEL AND JOEL HEINTSCHEL; TOM HENDERSON AND SHELLEY HENDERSON; ROY JAMAIL AND MARY JAMAIL; TODD JOHNSON AND JENNIFER JOHNSON; DARRYL KELLER; JOHNNIE LEGGIO, JR.; ROBERT LISTA AND LINDA LISTA;**

DOUGLAS AND CYNTHIA LONGRON; MARKLE LAND CO., LLC; MICHAEL MATHIS; DANIEL KLING MCNEILL; JONATHAN MULLINS AND KIMBERLY MULLINS; ND&D INTERESTS, LTD; GARY NIXON; ALBERT PEREZ AND ELSA PEREZ; HANA PINARD; CURTIS PLAGENS; SUSAN PLAUMANN; JOHN D. RENTZ; RICHARD ROUNDER AND CLAIRE ROUNDER; ENRIQUE SANCHEZ, JR.; JOE SANCHEZ; GARLAND SCHOEN; JAMES SCOTT AND CAROL SCOTT; BRAD SINGLETARY; GLENDA SPARKS; LLOYD SPEVACK AND DENISE SPEVACK; JIMMY SRADER; SHARON STAFFORD AND O.K. STAFFORD; DAVID STAMPS AND CINDY STAMPS; JOHN J. STOUT; DON STRONG; STEVE SZABO; VIRGINIA TELLER; HAROLD THOMSON AND PATRICIA THOMSON; AMADOR TREVINO; BEVERLY VAN ZANDT; MICHAEL VAUGHTERS AND LINDA VAUGHTERS; FREEMAN VICKERS AND EMILY VICKERS; ROBERT WRIGHT AND STEPHANIE WRIGHT; OSMOND J. YOUNG; AND RAMONA ZURSCHMIEDE, Appellees

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-74622**

## O P I N I O N

More than ninety property owners filed a lawsuit against the Port of Houston Authority, alleging that its negligent operation of a container terminal along the Bayport Ship Channel constitutes a nuisance that interferes with the use and enjoyment of their property and violates a municipal noise-control ordinance. The Port Authority filed a plea to the jurisdiction, seeking dismissal based on governmental immunity. The trial court denied the Port Authority's plea. On

2

interlocutory appeal,[1] we hold that the property owners' claims do not fall within the scope of the limited waiver of governmental immunity stated in the Texas Tort Claims Act, reverse the trial court's order denying the Port Authority's plea, and render judgment dismissing the property owners' claims.

## Background

The Port of Houston is a 25-mile-long complex of diversified public and private marine terminals, industries, and facilities. The Port Authority, a political subdivision of the State of Texas and a navigation district,[2] is charged with owning, operating, and developing the Port of Houston's public marine terminals, including the Bayport Container Terminal. The Bayport Terminal supports the Port Authority's handling of containerized cargo in the Gulf of Mexico, which is the Port Authority's core business, and consists of at least 3320 feet of container dock and a 160-acre container yard. Eventually, the Bayport Terminal will have the capacity to accommodate up to seven container ships with 7000 feet of container dock and 375 acres of container yard.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8) (West Supp. 2012) (permitting interlocutory appeal from order granting or denying governmental unit's jurisdictional plea).

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (West Supp. 2012) (defining "governmental unit" to include "a political subdivision of this state, including any . . . navigation district"); *City of Seabrook v. Port of Houston Auth.*, 199 S.W.3d 403, 404−05 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd) (explaining constitutional authority pursuant to which legislature created Port Authority).

As explained by the Port Authority's Vice President of Strategic Planning,

> [t]he movement of containers into the Bayport Terminal begins when a vessel docks at the Bayport Terminal. The steamship line contracts with an independent stevedoring company, which rents wharf cranes from the Port Authority to offload the containers from the vessel. The wharf cranes are operated by employees of the stevedore company, as are yard-trucks that move containers from the dock to the container stacks. Once at the stacks, containers are picked up by rubber-tire gentry cranes ("RTGs") and placed in line for delivery. The RTGs are operated by members of the longshoreman's union hired by the Port Authority. Over-the-road semi-tractors ("18-wheelers"), arrive at Bayport Terminal, pick up containers, depart the terminal, and deliver them to their final destinations. The exporting process works the same way, but in reverse order.

Ninety-five property owners in a community located near the Bayport Terminal, filed suit against the Port Authority under the Texas Tort Claims Act (TTCA).[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001−.109 (West 2011 & Supp. 2012). The property owners stated causes of action for negligent nuisance and negligence per se, alleging that the Port Authority's operation of the facilities and equipment at the Bayport Container Terminal causes excessive noise, light, and chemical pollution that interferes with the use and enjoyment of their homes

---

[3] This lawsuit is the property owners' second lawsuit against the Port Authority arising from its operation of the Bayport Terminal. The property owners previously filed a suit in the County Civil Court at Law No. 4 for Harris County, alleging claims for intentional nuisance, inverse condemnation, and unconstitutional takings. That case was dismissed on the Port Authority's pleas to the jurisdiction and was appealed to this Court. Today, this Court issues its opinions in both appeals.

and violates a municipal noise-control ordinance. The Port Authority's alleged negligent acts and omissions include:

- the operation of motorized cranes in a manner that creates unreasonably loud noises by causing containers to bang against each other, their racks, and their trailers;

- the use of excessively loud horns, loudspeakers, alarms, and lights throughout the night;

- the emission of large quantities of pollutants and noxious substances from the use of motor-driven equipment; and

- the failure to provide shore-based electrical service for vessels docked at the terminal so as to avoid the vessels' use of onboard generators that emit additional noise and air pollution.

All of the property owners alleged the same damages, with no one plaintiff alleging any additional or particularized harm. With respect to damage to their homes, the property owners alleged an "ongoing assault upon their senses by the light photons, sound waves, and noxious chemicals and the resulting loss of the use and enjoyment of their property, a substantial reduction in the value of their homes and property, the deprivation of the enjoyment of their property through apprehension and loss of peace of mind, inability to sleep, mental anguish, and disruption of peaceful enjoyment." With respect to the damage to their persons, the property owners alleged "sleep deprivation and resulting physical maladies, traumatic stress disorders, and extreme mental anguish."

The Port Authority filed a plea to the jurisdiction. The jurisdictional plea asserted that the TTCA does not waive governmental immunity absent allegations of physical damage or destruction or property and physical bodily injury; that the property owners had pleaded only economic loss resulting from the loss of enjoyment and diminution in value of their property and resulting mental anguish; and thus, the trial court lacked subject-matter jurisdiction over the property owners' negligence suit. After the Port Authority filed its plea to the jurisdiction, the property owners thrice amended their petition, and the Port Authority filed an amended plea to the jurisdiction asserting the same grounds for dismissal. In response to the Port Authority's amended plea, the property owners filed their Fourth Amended Petition. After an oral hearing, the trial court denied the Port Authority's amended plea. This appeal followed.

**Standard of Review**

A trial court must have subject-matter jurisdiction before it may hear a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plaintiff bears the initial burden of alleging facts that affirmatively demonstrate the trial court's subject-matter jurisdiction over the suit. *Id.* at 446. A defendant may challenge the trial court's subject-matter jurisdiction through a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The purpose of a plea to the jurisdiction is to "defeat a cause of action without

6

regard to whether the claims asserted have merit." *Id.* It does not authorize delving into the substance of the plaintiffs' claims, but rather, examination of whether the merits of those claims should be reached. *Id.* Accordingly, in reviewing the trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in favor of the plaintiffs and determine if the plaintiffs have alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Villarreal v. Harris Cnty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.). If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not reveal incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the trial court may either afford the plaintiffs an opportunity to amend or await further development of the case on the merits. *Miranda*, 133 S.W.3d at 226–27; *Villarreal*, 226 S.W.3d at 541. Conversely, if the pleadings affirmatively negate the existence of jurisdiction, the trial court may grant the plea to the jurisdiction without providing the plaintiffs an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *Villarreal*, 226 S.W.3d at 541.

## Governmental Immunity

The Port Authority contends that the trial court erred in denying its plea to the jurisdiction because the damages pleaded by the property owners—described by the Port Authority as loss of enjoyment and diminution in value of property and

7

mental anguish and other emotional harm—do not fall within the scope of the TTCA's limited waiver of governmental immunity for "property damage" or "personal injury" caused by certain negligent acts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. According to the Port Authority, the TTCA requires specific allegations of *physical* damage to or destruction of property and *physical* bodily injury. The Port Authority further contends that because the property owners have had reasonable opportunity to cure their pleading defects in four amended petitions and have not done so in a manner sufficient to establish the trial court's subject-matter jurisdiction, we should render judgment dismissing the suit without affording the property owners the opportunity to amend their pleadings for the fifth time. We address each of these contentions in turn.

## A. Governmental immunity, generally

"Governmental immunity protects subdivisions of the State . . . from lawsuits and liability, which would otherwise 'hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purpose.'" *City of Houston v. Esparza*, 369 S.W.3d 238, 244 (Tex. App.—Houston [1st Dist.] 2011, pet. filed) (quoting *Mission Consolidated Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655−56 (Tex. 2008)). The State can waive this immunity, and the legislature has enacted statutes that create limited waivers with respect to specific types of claims.

8

*E.g.*, TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001−.109; TEX. LAB. CODE ANN. §§ 21.001−.556 (West 2006 & Supp. 2012).

The TTCA is one such statute that provides a limited waiver of governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001−.109. Although governmental immunity has two components—immunity from liability and immunity from suit—the TTCA "creates a unique statutory scheme in which the two immunities are co-extensive." *Miranda*, 133 S.W.3d at 224. "Sovereign immunity to suit is waived and abolished to the extent of liability created by [the TTCA]." TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a); *Miranda*, 133 S.W.3d at 224. Thus, the Port Authority is immune from suit unless the TTCA expressly waives immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (defining "governmental unit" to include navigation district); *City of Seabrook v. Port of Houston Auth.*, 199 S.W.3d 403, 404−05 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd) (defining Port Authority as governmental unit).

## B.    The Port Authority's tort liability under the TTCA

In essence, the property owners have alleged nuisance claims against the Port Authority; the property owners' negligence claim asserts a nuisance in fact, and the property owners' claim for violation of a municipal noise-control ordinance asserts a nuisance per se. "In some cases, the [TTCA] may waive

9

immunity from certain nuisance claims." *See City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004).[4] Relevant to this appeal, section 101.021 of the TTCA waives governmental immunity for (1) property damage and personal injury arising from the operation or use of motor-driven equipment and (2) "personal injury . . . caused by a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1), (2).

Both parties assume, for purposes of this appeal, that the property owners have pleaded acts or omissions on the part of the Port Authority that, if proven, could subject the Port Authority to liability for its use of motor-driven equipment or a condition of its property under section 101.021. What the parties dispute is whether the Port Authority nevertheless retains its immunity because the damages pleaded by the property owners are not the type of property or personal injury damages contemplated in section 101.021. Thus, the jurisdictional determination in this case turns on our construction of section 101.021.

A court's primary objective in construing any statute is to determine and give effect to the legislature's intent. *See State Dep't of Hwys. & Pub. Transp. v.*

---

[4] Governmental immunity is also waived with respect to nuisance claims (1) when a nuisance action rises to the level of a constitutional taking or (2) the nuisance arises from a governmental unit's proprietary function. *See Jennings*, 142 S.W.3d at 316. The property owners do not allege that the Port Authority's operation of the Bayport Terminal rises to the level of a constitutional taking of their property, nor do they assert that the operation of the Bayport Terminal is a proprietary function. The property owners rely solely on the TTCA.

*Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Esparza*, 369 S.W.3d at 243. We interpret statutory waivers of immunity narrowly, as the legislature's intent to waive immunity must be clear and unambiguous. *See Garcia*, 253 S.W.3d at 655 (citing TEX. GOV'T CODE ANN. § 311.034 (West Supp. 2012)); *City of Houston v. Vallejo*, 371 S.W.3d 499, 502 (Tex. App.—Houston [1st Dist.] 2012, pet. filed); *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 25 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

### 1. Property damage

Neither section 101.021 nor any other provision of the TTCA defines the term "property damage." The Port Authority contends that property damage can only be reasonably defined to mean the physical destruction of or damage to property because such a definition affords the term its common usage and comports with the common-law economic-loss rule that precludes recovery of purely economic or financial losses. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415−20 (Tex. 2011) (explaining economic-loss rule). The property owners respond that the Port Authority's negligent operation of the Bayport Terminal facilities and equipment has resulted in unnecessary light, noise, and chemical insults upon their property. Although the Port Authority acknowledges that noise, light, and chemical intrusions have physical properties in a technical sense, the Port Authority disputes that those intrusions physically

11

damage property, and consequently, whether the property owners can establish a waiver of governmental immunity under section 101.021. The Port Authority further asserts that construing section 101.021 as a waiver of governmental immunity for claims alleging the type of damage allegedly sustained by the property owners here works an end-run around the community-damage rule that precludes recovery of widely shared or community harms in inverse-condemnation cases. *See Felts v. Harris Cnty.*, 915 S.W.2d 482, 484 (Tex. 1996) (explaining community-damages rule).

We need not resolve the issues of whether, as the Port Authority argues, the waiver of immunity stated in section 101.021 requires physical property damage or whether, as the property owners argue, the light, sound, and chemicals emitting from the Bayport Terminal constitute physical intrusions on the property owners' property for which damages are recoverable in a nuisance action. We conclude that the harm alleged by the property owners is not compensable property damage under the TTCA for another reason—namely, because it is harm suffered by the community generally surrounding the container terminal. No one plaintiff alleges a particularized grievance separate and apart from any other plaintiff. To hold that section 101.021 of the TTCA waives governmental immunity for suits to recover such damages would be contrary to the rule of narrow construction of governmental-immunity waivers because it would subvert long-recognized law

12

that precludes private actions against governmental entities for community damages. *See Felts*, 915 S.W.2d at 484.

*Felts*, a constitutional takings case, is most instructive regarding the community-damages rule. There, the Supreme Court considered the extent to which a governmental unit's "interference with private property short of physical appropriation may be compensable under our Constitution." *Id.* The Court concluded that recovery in a constitutional takings case is allowed only if the injury is not one suffered by the community in general, reasoning:

> Although the Texas Constitution does not require a physical appropriation, neither does it require compensation for every decrease in market value attributed to a governmental activity. Throughout its history, courts have construed Article I, Section 17 to allow recovery only if the injury is not one suffered by the community in general. As we explained in *G.C. & S.F. Ry. v. Fuller*[, 63 Tex. 467, 470−71 (1885)]:
>
> > Every government has the power to construct or cause to be constructed public works, and in so far as such construction works an injury to the public, it can give no one a right to a private action.
> >
> > A railway may be built in such relation to a prosperous town as practically to destroy the value of the real estate in it, or in a part of it, and to destroy the business of its inhabitants, but if it be built in accordance with legislative permission, this would not entitle a person to maintain an action for loss resulting from the diminution in value of his property in the town or his loss of business.
> >
> > In reference to such things benefits will accrue to some communities and persons, and depreciation in values result to the property of others; but these neither entitle a public work to

13

> compensation for benefits conferred, nor render it liable for such losses as may be sustained. . . .
>
> We concluded that injuries to property received or sustained in common with the community in which the property is situated, and resulting from the operation of a public work, are community in nature. Community damages are not connected with the landowner's use and enjoyment of property and give rise to no compensation.

*Id.* at 484−85 (citations omitted).

In other words, for more than one hundred years, an injury imposed by a governmental unit on a plaintiff as part of the general community has not been a compensable property damage. *See id.* (citing *G.C. & S.F. Ry.*, 63 Tex. at 470−71). If such community damages are not compensable property damages in an action arising from the intentional acts of a governmental unit, we conclude that the legislature did not contemplate that section 101.021 would provide an avenue for recovery for such damages in a suit based on a governmental unit's negligent acts. Thus, we will not construe section 101.021 and its limited waiver of governmental immunity in a manner that would allow community damages for negligent government conduct that are precluded for intentional government conduct.[5]

It is undisputed that the Bayport Terminal is a public work. The property owners did not contest the Port Authority's evidence of the need for the Bayport

---

[5] Our refusal to construe section 101.021 in a manner that would create an end-run around the community-damages rule is supported by the rule of construction that presumes, in enacting a statute, the legislature favored public interest over any private interest. *See* TEX. GOV'T CODE ANN. § 311.021(5) (West 2013).

14

Terminal's construction and operation in the trial court. Claims arising from such public works and involving noise, light, and pollution like that alleged by the property owners are barred by the community-damages rule. *See, e.g.*, *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 647–48 (Tex. 2004) (holding that bright lights from highway were not compensable under constitution because impact from public works "are compensable only to the extent they are not common to the community"); *Felts*, 915 S.W.2d at 485–86 (holding that "noise emanating from a roadway ha[d] a similar impact on the community as a whole" and thus was noncompensable, "quintessential" community damage); *Cernosek Enters., Inc. v. City of Mont Belvieu*, 338 S.W.3d 655, 656 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that plaintiff who alleged well drilling destroyed "peace and general welfare of the nearby community" and "decrease[d] the property values" failed to demonstrate that "injury affect[ed] it in some special or unique way that [was] different from the injury suffered by the community at large"). In light of the preceding and given the rule of narrow construction of waivers of immunity, we hold that the property owners' claimed damages—diminution in value and loss of enjoyment that are shared in common with the community—do not constitute property damage under section 101.021. Accordingly, the Port Authority retains its immunity, and the trial court erred in

denying the Port Authority's plea to the jurisdiction as to the property owners' claims for damage to their homes.

Our conclusion that the Port Authority is immune from the property owners' negligent nuisance claim also disposes of the property owners' argument that the operation of the Bayport Terminal constitutes a nuisance per se under the municipal noise control ordinance. Nothing in section 101.021 indicates a legislative intent to waive governmental immunity for property damage suffered by the community generally. We thus conclude that, for the purpose of governmental immunity, it makes no difference whether the conditions alleged are characterized as a nuisance in fact or nuisance per se. In either circumstance, the Port Authority retains its immunity from the property owners' suit for damages to their homes.

## 2.    Personal injury

We next determine whether the property owners have pled "personal injur[ies]" within the scope of section 101.021's limited waiver of governmental immunity. The Port Authority contends that personal injury is a term of art in the TTCA that cannot include mental anguish or its manifestations derived from property damage, unaccompanied by physical injury. Because the mental anguish and other emotional harm claimed by the property owners is, according to the Port Authority, merely derivative of their property damage claims, the waiver of sovereign immunity stated in section 101.021 is not implicated.

16

Although the property owners state in their briefing in this Court that the light, sound, and chemical pollution emitting from the Bayport Terminal has resulted in physical pain that will likely require medical treatment and monitoring in the future, no such allegation appears in their live pleading. The only personal injuries actually pleaded by the property owners include "sleep deprivation and resulting physical maladies, traumatic stress disorders, and extreme mental anguish." We agree with the Port Authority's characterization of these damages as mental anguish and the physical symptoms of mental anguish.[6] With respect to the issue of whether such damages fall within the scope of section 101.021, we are mindful that the TTCA "does not create a cause of action; it merely waives [governmental] immunity as a bar to a suit that would otherwise exist." *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997). Thus, unless the property owners would have a claim for "sleep deprivation and resulting physical maladies, traumatic stress disorders, and extreme mental anguish" under common law against a private defendant, we need not reach the question of whether such damages are a personal injury for which the legislature has waived the Port Authority's governmental immunity. *See id.*

---

[6] Regarding the property owners' pleading of sleep deprivation and resulting physical maladies, we note that the Supreme Court has categorized difficulty sleeping as a "minor physical symptom," not bodily injury. *Likes*, 962 S.W.2d at 496.

17

The Supreme Court's holding in *City of Tyler v. Likes* is dispositive here. The plaintiff in *Likes* alleged that a city's negligence caused her home to flood. The principal issue presented was whether mental-anguish damages are recoverable for the negligent destruction of property. 962 S.W.2d at 489. Without deciding whether mental anguish is a "personal injury" within the meaning of section 101.021 and focusing instead on whether any defendant (regardless of its status as a governmental unit) would be liable for such damages, the Supreme Court answered no. *Id.* at 496. The Supreme Court held that "damages measured by diminution in value are an adequate and appropriate remedy for negligent harm to real or personal property, and that mental anguish based solely on negligent property damage is not compensable as a matter of law." *Id.* at 497.

Like the Supreme Court in *Likes*, we do not reach the issue of whether the damages pleaded by the property owners are personal injuries within the meaning of section 101.021 because the property owners have not stated a claim that would subject the Port Authority to liability as a private defendant for mental anguish or any physical symptoms resulting from mental anguish. We therefore hold that the Port Authority retains its immunity, and the trial court erred in denying the plea to its jurisdiction as to the property owners' claim for personal injury. In so holding, we reject the property owners' assertion that the pleading of wanton conduct by the Port Authority—a heightened mental culpability—warrants an award of mental

18

anguish damages unaccompanied by physical injury. Section 101.021 waives immunity only for negligence. *See Gay v. State*, 730 S.W.2d 154, 158 (Tex. App.—Amarillo 1987, no writ) (TTCA does not waive immunity for gross negligence or deliberate indifference).

## CONCLUSION

We reverse the order of the trial court, and we render judgment dismissing the property owners' claims against the Port Authority.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.