**AFFIRMED and Opinion Filed December 3, 2020**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-00961-CV**

**THE CITY OF BLUE RIDGE, Appellant**

**V.**

**FRANK RAPPOLD AND OLGA RAPPOLD, INDIVIDUALLY AND AS NEXT FRIEND OF K.R., A MINOR CHILD, AND OF F.R., JR., A MINOR CHILD, AND LINDA RAPPOLD, Appellees**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-05678-2017**

## MEMORANDUM OPINION

Before Justices Molberg and Carlyle[1]
Opinion by Justice Carlyle

The City of Blue Ridge appeals the trial court's order denying its plea to the jurisdiction. We affirm.

### BACKGROUND

In November 2017, the Rappolds filed their original petition against the City alleging the City's wastewater treatment facility (WWTF), which connected to

---

[1] The Honorable David Bridges, Justice, participated in the submission of this appeal; however, he did not participate in the issuance of this opinion due to his death on July 25, 2020. *See* TEX. R. APP. P. 41.1(a).

sewer conduits that terminated in two manholes "adjacent to and almost contiguous with" the southern boundary of the Rappolds' property, failed in its operation after electrical components failed, resulting in a combination of raw sewage and storm water covering portions of their property on November 28 and 29, 2015. The Rappolds asserted claims of negligence, gross negligence, negligence per se, and taking of their property without compensation. The Rappolds alleged they suffered property damage, health problems, and mental anguish due to the discharges covering their property, which included fecal matter, used toilet paper, used condoms, and used tampons.

The Rappolds brought their negligence-related claims under the Texas Tort Claims Act (TTCA), which waives governmental immunity for claims involving the negligent use and operation of motor-driven equipment by City employees acting within the scope of their employment, as well as claims arising from the use or condition of the City's tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE § 101.021.

In January 2018, the City filed special exceptions, an answer, affirmative defenses, and also served discovery requests, though it appears the Rappolds' counsel did not receive these documents until February 2018. After agreed extensions to the discovery deadline, the City moved to compel discovery responses. The Rappolds moved for a protective order, characterizing the discovery requests as "voluminous," "broad," and "going to the merits of this action." The trial court

eventually delayed any hearing on the City's motion to compel until after deciding the plea to the jurisdiction. In an email discussing its decision to delay discussion of the City's motion to compel, the trial court also noted it took no position on whether "taking up the defendant's motion would constitute a waiver of defendant's objection to jurisdiction, or whether the court could consider the motion to compel 'subject to' the defendant's objection (assuming that defendant has pleaded that its motion to compel was 'subject to' its objection, which [the court does not] believe the defendant has)."

In February 2018, the City filed a plea to the jurisdiction alleging the following version of the facts, largely corroborating the Rappolds' allegations:

5. During the month of November 2015, North Texas received substantial rainfall. Specifically, between November 26, 2015, and November 29, 2015, 7.89 inches of rain was recorded. Blue Ridge's wastewater treatment system is an older system that also receives drainage runoff. Thus, the unusually high rainfall put a substantial burden on Blue Ridge's wastewater treatment system.

6. Already under a strain from the increased rainfall, on Saturday, November 28, 2015, Blue Ridge's wastewater lift station encountered trouble when electrical breakers unexpectedly tripped. Thus, the station's pumps did not run, and there was a wastewater discharge. The electrical breakers tripped again on Sunday, November 29, 2015, resulting in a second discharge. Blue Ridge's offices were closed that weekend, following Thanksgiving on November 26, 2015. Consequently, Blue Ridge was not aware of either discharge until a Blue Ridge employee discovered the discharge on November 29, 2015. Blue Ridge received no residents reports of the discharge.

7. Blue Ridge was contacted on November 30, 2015, by a representative of the Texas Commission on Environmental Quality ("TCEQ") who indicated that the TCEQ had received a complaint on November 28,

2015, regarding the first discharge. Yet, Blue Ridge received no notice of the discharge from a resident.

8. TCEQ conducted an on-site investigation on November 30, 2015, and noted the area of the discharge. The TCEQ also noted that the surrounding floodplain was saturated due to the recent storms, which likely caused the wet ground around the wastewater treatment facility. The TCEQ investigator did not observe any additional discharges or main breaks.

9. In response to the discharge, Blue Ridge disinfected the area around the manhole from which the discharge flowed by spreading granulated chlorine. Blue Ridge spread additional granulated chlorine over the affected area and raked to remove standing debris in response to TCEQ's second inspection on December 4, 2015. Blue Ridge also called an electrician to repair the electrical breakers.

Based on these facts, the City asserted its "Sovereign/Governmental Immunity from suit."

In April 2018, the Rappolds filed their first amended petition, which is now the live petition. The amended petition includes additional allegations of raw sewage discharges that occurred after they filed the original petition, one on December 19, 2017 and one on February 21, 2018. The petition alleges that the 2017 and 2018 discharges were "virtually identical" to the 2015 discharges. After a May 2018 hearing on the plea to the jurisdiction, the trial court denied the City's plea to the jurisdiction, and this appeal followed.

**THE RAPPOLDS PLEADED SUFFICIENT FACTS TO CONFER JURISDICTION AT THIS STAGE OF THE LITIGATION.**

–4–

In its brief,[2] the City argues governmental immunity bars the Rappolds' negligence claims for various reasons and that the Rappolds failed to adequately plead a takings claim. We review the trial court's ruling on the City's plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

When a plea to the jurisdiction challenges the pleadings, we must determine if the pleader alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See id.* To make this determination, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Id.* at 226, 228. Where the pleadings do not allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate an incurable jurisdictional defect, the issue is one of pleading sufficiency, and the plaintiffs should be given an opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, courts must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *Id.*; *State v. Holland*, 221 S.W.3d 639, 643 (Tex.

---

[2] The City did not file a reply brief.

2007). A plea should not be granted if a fact issue is presented as to the court's jurisdiction. *Miranda*, 133 S.W.3d at 228; *Holland*, 221 S.W.3d at 643. When reviewing an evidence-based plea implicating the merits of the case, we apply a standard similar to that applied in a summary judgment. *Miranda*, 133 S.W.3d at 228. We take as true all evidence favorable to the nonmovant, and we both indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

**The Rappolds' negligence allegations are sufficient to trigger immunity waiver at this stage of the litigation.**

The TTCA codifies immunity waiver for a municipality's tortious conduct resulting in "damages arising from its governmental functions," including activities related to sanitary and storm sewers. TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9); *see City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997). Section 101.021 provides for immunity waiver when the plaintiff urges a claim for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.

The Rappolds alleged negligence under both sections: 101.021(1), operation or use of motor-driven equipment, and 101.021(2), condition or use of tangible personal property or real property. We consider these allegations in turn, bearing in mind that the initial issue is whether, at this stage of the litigation, the Rappolds adequately pleaded negligence that satisfies the strictures laid out in section 101.021. *See Kilburn v. Fort Bend Cnty. Drainage Dist.*, 411 S.W.3d 33, 40–41 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing TEX. R. CIV. P. 45, 47; *Miranda*, 133 S.W.3d at 230). And, because the parties presented evidence in support of their positions on the plea, we review the challenge to the existence of jurisdictional facts as we would on summary judgment. *Miranda*, 133 S.W.3d at 227–28.

The Rappolds alleged that during the first discharge in 2015, an electricity outage caused the motor-driven pumps at the City's WWTF to stop operating during a heavy rainfall. The City tasked these pumps with handling both rain water and sewage. When the overtaxed pumps stopped pumping, the mix of raw sewage and storm water seeped through the sewer conduits and flooded large portions of their property. On November 28, a City employee arrived at the WWTF after being notified of the discharge, reset the electrical breaker, and the pumps began to work again. When the breaker tripped again on November 29, a different City employee went to the facility but was unable to restore power to the pumps.

During the second discharge in 2017, the City claimed the pumps never stopped working, but were "unable to process all the rainwater runoff" from a heavy

storm. The Rappolds allege, in part, that this was due to the City's dual assignment of duties to the system, rain and sewage. No City employees were on site during the storm, but one visited the site on the evening of the discharge to investigate.

During the third discharge in 2018, Blue Ridge again received heavy rain, and a City employee was on site throughout the storm that day. The employee confirmed the pumps never stopped working during the storm, though the plant's inability to process the rain along with regular sewage again led to sewage flowing onto the Rappolds' property.

*Specific employee or contemporaneous act*

The City first complains the Rappolds failed to allege that a City employee would be personally liable to them for the operation or use of motor-driven equipment.[3] The City makes a philosophical argument: "it is undisputed that the pumps at issue activate/function automatically, *i.e.*, they are automated," thus the Rappolds failed to allege that a specific City employee "manually operated, activated, or otherwise used or misused the pump," and the City therefore retains immunity.

Plaintiffs have no obligation under the TTCA to plead a specific employee's negligence, only that a City employee acted negligently and within the scope of employment, especially when, as here, no discovery has yet been conducted. *See*

---

[3] Though the heading in the City's brief states only that "There is No Liability for the use of Motor-Driven Equipment," the City addresses the Rappolds' "operation" allegations as well as their "use" allegations. As we explain, the City incorrectly argues as if the two terms are synonymous.

*City of Paris v. Floyd*, 150 S.W.3d 224, 229 (Tex. App.—Texarkana 2004, no pet.) (citing *Miranda*, 133 S.W.3d at 229). The Rappolds alleged City employees operated, maintained, and used the motor-driven pumps improperly to their failure, regardless of whether they did so manually or by setting the pumps to work automatically. Moreover, a City employee chose to operate the pumps to process both storm water and sewage, which the Rappolds allege contributed to their failure.

Relatedly, the City argues there was no allegation of a contemporaneous act "by any Blue Ridge employee" to qualify as a "use" under settled case law, citing *Sampson v. University of Texas at Austin*, 500 S.W.3d 380, 388–89 (Tex. 2016). This seems to be a form of the argument that there must be a nexus between an employee's specific act of negligence and the injury, or quoting the statutory text, that the injury "arises from" the operation or use of motor-driven equipment. TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). We disagree both with the City's statement of the law and its conclusion.

As we said, there is no requirement to allege a specific employee's act to survive a plea to the jurisdiction at this phase of the litigation. *See Floyd*, 150 S.W.3d at 229 (citing *Miranda*, 133 S.W.3d at 229). The Rappolds alleged City conduct that caused damage to their property and City conduct that caused them personal injury— both types of damage arising contemporaneously with actions taken during and immediately after each discharge. Moreover, the City provided evidence from specific employees whose job was to operate the WWTF before, at, and after the

–9–

times of the discharges. The employees confirmed facts the Rappolds pleaded and introduced certain other information, including that City employees were summoned to the WWTF after each discharge or were already present during the discharge. The Rappolds' allegations are sufficient at this stage, and the record includes evidence that, far from "negating" jurisdiction, indicates there are fact issues as to whether City employees were operating the plant negligently at the time of the discharges. *See Miranda*, 133 S.W.3d at 227–28.

*"Non-use"*

To the extent the City argues the Rappolds have only alleged a "non-use," we disagree. The City's argument suggests that because the pumps failed, they were not being used at the time of the discharges; and, because courts have concluded the opposite of use, "non-use," is not covered by section 101.021's immunity waiver, the City's failure to operate its pumps could not result in immunity waiver.

The non-use cases have a common thread: a governmental entity either chose not to use or failed to implement a certain piece of equipment that may have prevented the plaintiff's damages. For example, one plaintiff complained of a fire that occurred on her property due to accumulated gasoline vapors that never would have accumulated had the governmental unit used a motor-driven pump it previously used. *See Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869–70 (Tex. 2001). The supreme court concluded this was a complaint about non-use of

–10–

the pump because the defendant previously installed the pump, later removed the pump, and the fire occurred after the pump was removed. *Id.* at 870.

In another case involving a blown-out tire on a fire truck, allegations of a city's "negligent inspection, maintenance, and/or repair" of the fire truck were considered non-use allegations. *City of Smithville v. Watts*, No. 03-13-00173-CV, 2013 WL 6665085, at *4, 5 (Tex. App.—Austin Dec. 13, 2013, no pet.) (mem. op.). Importantly, the plaintiff in that case did not allege that a city employee used or negligently operated the fire truck; instead, the plaintiff alleged the city's employees were negligent in maintaining the fire truck for use by a third party.[4]

Here, the Rappolds' "use" allegations are similar in substance to those that have been found to satisfy section 101.021's strictures at this stage of the litigation. For example, in *McDonald v. City of the Colony*, the Fort Worth court agreed that merely alleging the city failed to use a "mechanical bar screen" in a water-treatment facility would have been an allegation of "non-use." No. 02-08-263-CV, 2009 WL 1815648, at *1–2, 5–6 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.). But the plaintiff in that case also included allegations that: "(1) the lift station's 'motor-driven equipment'" was not "properly serviced, maintained and/or operated"

---

[4] We note that the Austin court seemed to place significance on the fact that the city allowed its volunteer fire department to use the vehicle and that the volunteer fire department was "a separate entity from [the city]." *City of Smithville*, 2013 WL 666585 at *4 (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex. 2012) ("A governmental unit does not 'use' property within the meaning of the TCA when it merely allows someone else to use it.")). We further note that the plaintiff in *City of Smithville* does not appear to have included allegations under section 101.021(2) in its live petition, but it appears to have made arguments on appeal aiming to bring its section 101.021(1) claims within section 101.021(2)'s purview, an invitation the court declined. *Id.* at *5.

and was "negligently used over the time periods relevant to the claims"; (2) the city continued operating the pumps despite having "actual knowledge that the lift station [was] operating outside of its operational limits and capacities for some time due to the condition and age of its existing motor driven pumps"; and (3) the lift station emitted "illegal and harmful levels of $H^2S$ and likely other toxic fumes and substances" because it was operating beyond capacity. *Id.* at *6. The plaintiff also submitted a TCEQ report and a "Preliminary Report," both establishing "that one or both of the operable pumps did not meet TCEQ design standards and that even after the TCEQ recommended immediate action be taken to reduce $H_2S$ levels, the City continued using the same pumps at the lift station." *Id.* Our sister court concluded those allegations were sufficient to establish jurisdiction under the TTCA. *See id.*

In a case very similar to this one, the Amarillo court concluded that allegations of a city's failure to properly operate its sewer pumps after an electrical outage were not "non-use" allegations for purposes of immunity waiver:

> Due to the electrical power failure, the sewer pumps were not performing their practical work of removing sewage from the holding tank to the treatment plant, but their use was to be in action or services for that given purpose. Their use is not denied by the fact that they were not in service, which caused the [plaintiff's] property damage when the city's employee failed to determine that they were not operating and not used for their purpose.

*4 DG's Corp. v. City of Lockney*, 853 S.W.2d 855, 857 (Tex. App.—Amarillo 1993, no pet.).

Here, the Rappolds similarly have alleged that the City's pumps did not operate properly after an electrical outage and that the City used its pumps and other motor-driven equipment "at levels for which they were [not] designed" or intended to be used. They further alleged City employees breached duties to use and operate the WWTF and its components—including the lift-station pumps and other motor-driven equipment—continuously and effectively in accordance with applicable rules and regulations; that they used the pumps and other components at the facility without maintaining, inspecting, diagnosing, or repairing them; and that they failed to design and construct the facility to ensure it would operate continuously, safely, and reliably.

The City, in turn, presented evidence—in the form of employee declarations—that heavy rain was the overriding cause of the pumps' inability to process the water. The City admits an electrical failure precipitated the first discharge, and the employee declarations suggest the electrical system did not fail during the second or third discharges. But the City also admits there was more inflow to the WWTF, at least during the third discharge, than it was able to "take in," leading to the discharge. Nothing in the City's evidence conclusively establishes its employees did not negligently use the WWTF's motor-driven equipment in an unsafe manner, as alleged by the Rappolds. We conclude the Rappolds have adequately alleged, at least at this stage of the litigation, that their damages were

caused by the negligent use of the City's motor-driven equipment, and the City's evidence at most creates a factual dispute on that issue.

*Operation*

Focusing on the use/non-use distinction, the City largely ignores the Rappolds' allegations that City employees' "operation" of the City's motor-driven equipment contributed to their damages. Merriam-Webster defines the transitive verb "operate" as: (1) bring about, effect; (2)(a) to cause to function: work; and (2)(b) to put or keep in operation. See *Operate*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/operate (last visited December 2, 2020).[5] The Rappolds alleged that the WWTF is not able to handle—or is not designed to receive—the capacity of storm water and sewage it receives at times. The City confirms the WWTF "can back-up" "[w]henever the area is inundated by rain," and that "the heavy rainfall" between November 26 and November 29, 2015 "put a substantial burden on the Facility." One of its employees' declarations characterized the second discharge as "solely the result of rainwater inundation." And another City employee's declaration said the area "received excessive rainfall"

---

[5] We use the dictionary as a guide based on direction from the supreme court to construe undefined words and phrases according to their "ordinary" meaning. *See Mt. Pleasant ISD v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989). When the supreme court borrowed the Corpus Christi court's dictionary definition of "operation," it used a definition of the *noun* "operation" ("a doing or performing of a practical work," quoting *Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 809 (Tex. Civ. App.—Corpus Christi 1972, writ ref'd n.r.e.)) instead of the definition of a conjugation of the *transitive verb* "operate," which we include above and which is the way the legislature used "operation" in section 101.021(1)(A). *Id.* That said, either using the noun definition of "operation" the supreme court previously chose or the transitive verb definition, the Rappolds have satisfied their pleading obligations at this time.

–14–

on and around each of the three discharges. We again conclude the Rappolds sufficiently alleged that City employees were negligent in operating the WWTF's motor-driven equipment beyond its capacity, causing damage to the Rappolds' health and property, and the City's evidence at most creates a factual dispute on that issue.

*Condition or use of tangible personal property*

The Rappolds also made negligence allegations regarding the condition or use of tangible personal property at the WWTF. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2). Though the Rappolds alleged the alternative basis of the "condition" of tangible personal property, and the City addressed the "condition" argument in a brief in support of its plea in the trial court, the City failed to specifically address the "condition of tangible personal property" allegations before this Court, other than to claim that the Rappolds "make no allegation as to the condition of the property." In its brief, the City addresses only the granulated chlorine its employees spread on the Rappolds' property after the discharges, claiming this was the only tangible personal property the Rappolds alleged in their petition.[6] The Rappolds answer in their brief that, due to the lack of discovery and the City's failure to submit evidence in support of its plea regarding tangible personal property at the WWTF, they have pleaded as specifically as they can, at this point in the litigation, that the condition or use of the various pieces of tangible personal property at the WWTF caused their damages.

Indeed, the Rappolds allege more than the use of granulated chlorine; they allege that other tangible personal property, including the electrical components that failed at the WWTF and led to the pumps shutting down, contributed to their

---

[6] We assume without deciding that the issue is properly before the Court as being fairly included within this denial. *See and cf. St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214–16 (Tex. 2020); TEX. R. APP. P. 38.1(f). In any event, we are evaluating the trial court's jurisdiction on de novo review and will undertake the level of analysis necessary to assure ourselves on the question of jurisdiction.

damages. The City seeks to confine the Rappolds' pleadings by redefining what they allege, but that is not proper practice at this stage and before this Court, where we are to indulge all reasonable inferences in favor of the Rappolds. *Miranda*, 133 S.W.3d at 228. The Rappolds' allegations are sufficient at this stage of the litigation, and the evidence, including TCEQ filings and the electrician's bills to the City after the First Discharge, leaves a fact issue as to the extent to which the condition of the WWTF's tangible personal property contributed to the Rappolds' damages. *See id.*

In these respects, viewing the pleadings and evidence in the light most favorable to the Rappolds, we conclude the Rappolds have sufficiently alleged that a City employee's misuse and operation of motor-driven pumps, as well as the condition or use of the City's tangible personal property, caused their damages *See McDonald*, 2009 WL 1815648, at *1–2, 5–6; *Sepulveda v. Cnty. of El Paso*, 170 S.W.3d 605, 614–615 (Tex. App.—El Paso 2005, pet. denied); *Bell v. City of Dallas*, 146 S.W.3d 819, 823 (Tex. App.—Dallas 2004, no pet.); *Floyd*, 150 S.W.3d at 229 (citing *Miranda*, 133 S.W.3d at 226–27); *4 DG's Corp*, 853 S.W.2d at 857–58. The trial court correctly denied the plea. *See Miranda*, 133 S.W.3d at 227–28; *McDonald*, 2009 WL 1815648, at *5–6; *Floyd*, 150 S.W.3d at 229.

*Gross Negligence*

The TTCA does not authorize exemplary damages. TEX. CIV. PRAC. & REM. CODE § 101.024. The Rappolds indicate they "have dropped their claims for gross negligence and punitive/exemplary damages." We cannot rely on this representation

–17–

alone, presented in an appellate brief and without further record documentation, to address the City's third issue.

We must read the statute the legislature wrote, not the one it should have written, and we will adhere closely to the plain language of the statute. While the TTCA prevents exemplary damages, it does not prevent a plaintiff from proceeding on a gross negligence theory. We note the TTCA authorizes claims for "negligence" and that when the Legislature uses "negligence" as a broad term, this includes all forms of negligence. *See Torres v. Chauncey Mansell & Mueller Supply Co., Inc.*, 518 S.W.3d 481, 491 (Tex. App.—Amarillo 2017, pet. denied) (citing *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (interpreting TEX. CIV. PRAC. & REM. CODE § 95.001(1)).[7] When we can, we strive to consistently interpret terms like negligence when they are used in various statutes regarding the same subject matter. *See Brown v. Darden*, 50 S.W.2d 261, 263 (Tex.1932) ("Whenever a legislature has used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same

---

[7] *But see Port of Houston Auth. v. Aaron*, 415 S.W.3d 355, 365 (Tex. App.—Houston [1st Dist.], no pet.) (citing *Gay v. State*, 730 S.W.2d 154, 158 (Tex. App.—Amarillo 1987, no writ) (TTCA does not waive immunity for gross negligence)). There is no substantive discussion in *Port of Houston*; rather, it simply cites *Gay*. The Amarillo court has at least tacitly declined to follow *Gay*, *see City of Amarillo v. Pruett*, 44 S.W.3d 702, 709 (Tex. App.—Amarillo 2011, no pet.), and other courts have concluded as we do with respect to the TTCA. *See, e.g.*, *Tex. Dep't of Pub. Safety v. Rivera*, No. 13-01-00293-CV, 2002 WL 720706, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2002, no pet.). We decline to follow *Gay* or *Port of Houston*, both issued before more recent guidance from the Texas Supreme Court—and the Amarillo court—regarding the meaning of "negligence."

sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby.").

Thus, we overrule the City's third issue to the extent it complains that the TTCA precludes a gross negligence theory and sustain it to the extent it complains the TTCA specifically precludes an award of exemplary damages.

**The Rappolds state a viable takings claim.**

The City has no sovereign immunity from a viable takings claim under the Texas or United States constitutions. *See Gen. Servs. Com'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Tejas Motel, L.L.C. v. City of Mesquite*, No. 05-19-00667-CV, 2020 WL 2988566, at \*5 (Tex. App.—Dallas June 4, 2020, pet. denied) (mem. op.). Whether particular facts are enough to constitute a taking is a question of law. *Gen. Servs. Com'n*, 39 S.W.3d at 598. Plaintiffs alleging takings claims must plead factual allegations sufficient "to establish that (1) the City intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *City of Carrollton v. Harlan*, 180 S.W.3d 894, 897 (Tex. App.—Dallas 2005, pet. denied); *Bell*, 146 S.W.3d at 825.[8]

The supreme court has explained what intent means for these claims: When a government entity physically damages private property to confer a public benefit, it may be liable if it: "(1) knows a specific act is causing identifiable harm; or (2)

---

[8] The parties agree the facility was constructed in 1982, so we face no pre-TTCA common law claims. *See City of Tyler v. Likes*, 962 S.W.2d 489, 500–01 (Tex. 1997).

–19–

knows that the specific property damage is substantially certain to result from an authorized government action—that is, that the damage is 'necessarily an incident to, or necessarily a consequential result of' the government's action." *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). In *Jennings*, the supreme court contemplated the real-world logic that cities, like every other functioning entity in the world, must employ at times: "There may well be times when a governmental entity is aware that its action will necessarily cause physical damage to certain private property, and yet determines that the benefit to the public outweighs the harm caused to that property. In such a situation, the property may be 'damaged for public use.'" *Id.*

Here, the Rappolds do not claim that the mere operation of the WWTF resulted in their damages. They claim the City knew of the WWTF's inadequacy for certain storms, and this much is included in the pleadings, which sufficiently allege the City's intent within the bounds of the *Jennings* definition. The Rappolds have pleaded more than the City's mere awareness of a possibility of damage, and, necessarily, that their damages were caused by more than mere accident. They allege that the City intentionally constructed the facility; that the City designed the facility to be unable to process an appropriate amount of inflow; that the City intentionally used its pumps to process both rainwater and sewage; that the City intentionally failed to maintain the facility; and that the City intentionally failed to monitor the facility during the rain storms. The Rappolds also alleged these various acts resulted

–20–

in a taking of their land for public use by way of raw sewage covering it during and after each discharge, which created a public benefit through the land's use as a waste-overflow depository.

We agree with the Rappolds that they have pleaded a taking in the form of the City's sewage and storm water flooding their privately owned land, land that was not subject to any City use for that "public use" purpose. It is this public use—raw, dank sewage flowing onto and remaining on the Rappolds' property, instead of staying in the City's sewers—that differentiates this theory of the case from a negligence theory. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 820–21 & n.39 (Tex. 2009).

This was not a summary judgment case, as *City of Tyler v. Likes* was, and as the City seems to argue in its brief, meaning the City here asked the trial court to determine only whether the Rappolds had stated a takings claim. *See Harlan*, 180 S.W.3d at 987 (no immunity from validly alleged inverse condemnation claim); *cf. Likes*, 962 S.W.2d at 505.[9] And we are confident our conclusion—based on the Rappolds' pleadings—does not encounter the problems the supreme court highlighted in reversing a jury's taking determination in *Pollock*, 284 S.W.3d at 821 (harm plaintiffs claimed, the migration of gas onto their property, was neither necessarily incident to nor a consequential result of operating landfill). This case

---

[9] In any event, the City failed to present evidence that it committed no intentional acts that created a taking. *See Likes*, 962 S.W.2d at 505.

–21–

remains at the pleadings stage, and at this point in the proceedings, the Rappolds have pleaded a viable takings claim. *See Jennings*, 142 S.W.3d at 314.

\* \* \*

We affirm the trial court's order denying the City's plea to the jurisdiction.

/Cory L. Carlyle/
_____
CORY L. CARLYLE
JUSTICE

190961F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE CITY OF BLUE RIDGE, Appellant

No. 05-19-00961-CV      V.

FRANK RAPPOLD AND OLGA RAPPOLD, INDIVIDUALLY AND AS NEXT FRIEND OF K.R., A MINOR CHILD, AND OF F.R., JR., A MINOR CHILD, AND LINDA RAPPOLD, Appellees

On Appeal from the 380th Judicial District Court, Collin County, Texas Trial Court Cause No. 380-05678-2017.
Opinion delivered by Justice Carlyle. Justice Molberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Frank Rappold and Olga Rappold, individually and as next friend of K.R., a minor child, and of F.R., Jr., a minor child, and Linda Rappold recover their costs of this appeal from appellant The City of Blue Ridge.

Judgment entered this 3rd day of December, 2020.